TRULINCS  42310080 - BALLOW, HARRIS DEMPSEY - Unit: THP-A-B

--------------------------------------------------------------------------------

FROM: 42310080
TO:
SUBJECT: AMENDED COMPLAINT 1
DATE: 03/10/2020 12:54:13 PM

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA

HARRIS DEMPSEY BALLOW
USP TERRE HAUTE
P.O. BOX 33
TERRE HAUTE IN 47808,

PLAINTIFF

vs                    CV NO. 2:20-cv-00018-JPH    AMENDED CIVIL COMPLAINT/JURY DEMAND

MARIA DEL SOCORRO FLORES LIERA,
DEL SUBSEBRETARIO DE RELACIONES EXTERIORES Y DEL SUBSECRETARIO PARA AMERICA DEL NORTE (MEXCIO);

DEFENDANT

CIVIL COMPLAINT

PLAINTIFF HARRIS DEMPSEY BALLOW PRO SE CIVIL COMPLAINT FOR MONETARY DAMAGES AND DECLARATORY RELIEF FOR THE DEFENDANT'S VIOLATIONS OF THE RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS ACT, TITLE 18 U.S.C. SECTION 1964 (18 U.S.C. SECTIONS 1961 ET SEQ.) (HEREINAFTER "RICO"). TRIAL BY JURY IS DEMANDED.

TRULINCS 42310080 - BALLOW, HARRIS DEMPSEY - Unit: THP-A-B

--------------------------------------------------------------------------------

FROM: 42310080
TO:
SUBJECT: AMENDED COMPLAINT 2
DATE: 03/11/2020 10:30:41 AM

COMES NOW, Harris Dempsey Ballow (PLAINTIFF) who hereby sues the above named DEFENDANT, as duly indentified infra in her personal capacity pursuant to the RICO Act and hereby seeks monetary damages in conjunction with specific Declaratory relief. In support thereof, Plaintiff Harris Dempsey Ballow will state as follows:

JURISDICTION

1. This Honorable Court has the requisite jurisdiction over the instant subject matter pursuant to Title 18 USC Section 1964(c), 18 USC Sections 1961 et seq.

VENUE

2. Plaintiff Harris Dempsey Ballow asserts venue is appropriate within the Southern District of Indiana, as the Plaintiff is damaged in his business and property while residing in the Southern District of Indiana at FCC Terre Haute and the Enterprise did conduct the affairs of Enterprise within the Southern District of Indiana, Title 18 USC Section 1965.

PARTIES: THE PLAINTIFF

3. The Plaintiff, Harris Dempsey Ballow is a citizen of the United States of America presently in custody of the Federal Bureau of Prisons, specifically USP Terre Haute In 47808 executing a Judgment in a Criminal Case. At all times relevant to this civil complaint the Plaintiff is in a sound state of mind, competent, and able to present the facts as occurred.

THE DEFENDANTS

4. Defendant MARIA DEL SOCORRO FLORES LIERA (hereinafter "Defendant") is at all times relevant to this complaint the individual person occupying the official position of the Under Secretary of Foreign Relations and Under Secretary for North America for the United Mexican States (MEXICO) in 2017. She is sued in her personal capacity.

COUNT 1

5. The Plaintiff adopts by reference paragraphs 1-4 herein above as written in this Count 1 and the entire Count 2 as if written in this Count 1 according to Rule 10(c) F.R.Civ.P.

6. The Defendant, along with unnamed United States Officials and unnamed Mexican Officials formed and participated in an Enterprise as defined in Title 18 USC Section 1961 et seq., in her personal capacity which engaged in a pattern of Racketeering Activity for the common purposes of violating the Plaintiff's rights pursuant to the Treaty of Extradition USA-Mexico (31 UST 5059); Title 18 USC Section 3192; and the Due Process and Equal Protection Clauses of the Constitution of the United States of America. The Defendant associated together with unnamed United States Officials and unnamed Mexican Officials, the Enterprise, committed hundreds of violations of Title 18 USC Sections 1512(c); 1952(a), from January 2010 until present, with the common purpose of engaging in a course of conduct and with specific intent to deceive and defraud through material misrepresentations and omissions calculated to deceive the Plaintiff, a person of ordinary prudence and comprehension. The Defendant within the Enterprise, by these material misrepresentations intended the Plaintiff to accept a substantial risk that he otherwise would not have taken. The Plaintiff is the victim of the conduct of the Enterprise that damaged and is damaging him in his business and property while effecting interstate and foreign commerce transcending international boarders and boundaries from 2010 until present.

7. The Enterprise consisted of the Defendant, unnamed United States Officials, unnamed Mexican Officials and OTHERS, as of yet unknown to the Plaintiff, within their respective official governmental positions and command structures. The Enterprise had a common purpose beyond that described herein above at no. 6, that being to violate the Plaintiff's rights pursuant to Title 18 USC Section 3192, the Treaty of Extradition USA-Mexico (31 UST 5059), and the Due Process and Equal Protection Clauses of the Constitution of the United States of America through the material misrepresentation on July 11, 2017 by diplomatic cable authorized by the Defendant and sent from Mexico City, Mexico to Washington D.C. to Houston Texas and ultimately ending in Terre Haute Indiana, based on "Article 17(1)(c) of the Extradition Treaty between the United Mexican States and the United States of America" which literally reads:

TRULINCS 42310080 - BALLOW, HARRIS DEMPSEY - Unit: THP-A-B

--------------------------------------------------------------------------------

"c) The requested Party has given its consent to detention, trial, punishment or extradition to a THIRD STATE for offense other than that for which the extradition was granted." [emphasis in caps] [Appx. *p 10*].

The Defendant as pert of the Enterprise did knowing, intentionally, with specific intent to deceive misrepresent and omit the absolute fact that there is and never existed a "third State" as Article 17(1)(c) requires before any "consent to exception to rule of specialty" could be requested and/or granted. Because there never was a "third State", the Enterprise consisting of unnamed United States Officials, unnamed Mexican Officials and the Defendant, never had the authority to grant any "consent to exception" of the Plaintiff's already solidified rights under Title 18 USC 3192 and 31 UST 5059, including immunity from detention, trial and punishment for any offense, crime, or cause whatsoever other than that offense, crime or cause by which his extradition was originally granted on Feb. 23, 2011. [Appx. *p 1* ]. The Defendant and the other Enterprise members knew this all too well and since 2010 including the diplomatic note no. 16-4620 of Dec. 14, 2016 from the unnamed United States Officials members of the Enterprise to the unnamed Mexican Officials members of the Enterprise, and the Defendant. The Enterprise members have knowingly and intentionally devised and implemented a scheme or artifice to defraud by concealing documents and records sent between Mexico and the United States across international boards and interstate boarders that confirm the planning, intent to conceal and concealing of documents and records that show there is no "third State" and there exists no authority to seek and/or grant "consent to exception to the Rule of Specialty" and the FACT that Mexico does not have authority to exempt any United States Official from the rights and obligations created by Title 18 USC Section 3192. These concealed records and documents were used by omission to deceive a United States District Court Judge and the Plaintiff in an official proceeding, specifically US v Ballow, no. H-10-494 (S.D. TX). These documents and records would have shown and will show that there never was in fact a THIRD STATE and that there is no authority in the United States with the jurisdiction to have ever detained, tried or punished the Plaintiff for the offense he now remains imprisoned for and the Enterprise members knew and know this from 2010 until present having conspired with each other within the Enterprise to fraudulently conceal said documents and records while aiding and abetting and causing each other do accomplish the goals of the Enterprise.

The relationship between the unnamed United States Officials, the Mexican Officials and the Defendant, the Enterprise, was one with the unnamed United States Officials in command and the unnamed Mexican Officials and the Defendant willing and intentional subordinates with full knowledge and understanding of the illegal and unconstitutional nature and goal of the Enterprise. The Enterprise began at latest in January 2010 and continues until present. As described herein above, the Enterprise, through a pattern of racketeering, activity used and affected interstate and foreign commerce as it utilized international mail, telephone and internet electronic communications to further the goal of the Enterprise hundreds of times to further their illicit agreement to violate the Plaintiff's rights pursuant to Title 18 USC Section 3192, 31 UST 5059, and the Due Process and Equal Protection Clauses of the Constitution of the United states of American, specifically but not limited to telephone and electronic communications directly from the Defendant and the unnamed Mexican Officials to the unnamed United States Officials to conceal documents and records for use in an official proceeding, US v Ballow, supra., up and down the official command structures of the Defendant, unnamed United States Officials and unnamed Mexican Officials respectively, including OTHERS as of yet unknown to the Plaintiff.

8. The Enterprise was created by the unnamed United States Officials, the unnamed Mexican Officials and the Defendant fraudulently to accomplish the racketeering activity in their individual and personal capacities using their official positions of authority and power within their respective governments to facilitated the purpose of the Enterprise and further their scheme to violate the rights of the Plaintiff pursuant to Title 18 USC Section 3192, 31 UST 5059, and the Due Process and Equal Protection Clauses of the Constitution of the United States of America.

9. The Defendant, as described herein above, as part of the operation of the Enterprise did, with unnamed United States Officials and the unnamed Mexican Officials, alter, conceal records, documents and other objects with intent to impair the records, documents and other objects integrity and/or availability for use in and official proceeding, thereby impeding said official proceeding namely the federal criminal case, United States v Ballow, supra. As part of the operation of the Enterprise the Defendant, the unnamed United States Officials and the unnamed Mexican Officials, did travel interstate and internationally, effecting interstate and foreign commerce, use the United States Postal Service ("mail"), the internet, diplomatic cables, and other facilities in interstate and international commerce with intent to otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment and carry on unlawful acting, specifically but not limited to, the concealing of documents and records as described herein above for use in an official proceeding, and thereafter, performed or attempted to perform said unlawful acts, from 2010 until present, in violation of Title 18 USC Sections 1512(c) and 1952(a)(1).

10. The Defendant, as part of the operation of the Enterprise with United States Officials, beginning in 2010 until present, did intend to devise and devised a scheme or artifice to defraud, for the propose of concealing the Enterprise documents and records across international (foreign) boarders and interstate Boarders to impede an official proceeding, namely U.S. v Ballow, No. H-10-494 (S.D. TX), and as explained herein above, by means of false, fraudulent pretenses, did transmit or cause to be transmitted by means of wire in interstate and international commerce writings, signs, signals, pictures and/or sounds for the

TRULINCS  42310080 - BALLOW, HARRIS DEMPSEY - Unit: THP-A-B

--------------------------------------------------------------------------------------------------

purpose of executing said scheme or artifice and the Enterprise, in violation of Title 18 USC Sections 1512(c) and 1952(a).

11. The Defendant, as part of the operation of the Enterprise with United States Officials beginning in 2010 until present did devise a scheme or artifice to defraud for the propose of violating the Plaintiff's rights pursuant to Title 18 USC Section 3192, 31 UST 5059, and the Due Process and Equal Protection Clauses (U.S. Const.) did cause to be placed in a Post Office Authorized Depository any matter or thing to be delivered by the Post Office in interstate and international commerce, from Washington D.C. to Houston Texas to Mexico City Mexico to Terre Haute Indiana (in any particular order or combination hereof), in violation of Title 18 USC Section 1952(a).

12. United States Officials and the Mexican Official Defendants as part of the operation of the Enterprise did, with intent to impair the availability and CONCEAL documents and records and other objects namely, the official governments communication records used by the Enterprise members revealing the intentional violations Title 18 USC Sections 1512(c) and 1952(a). The Enterprise throughout its ongoing existence through false testimony concealed documents and records, presented false and fraudulent documents and records into an official proceeding (US v Ballow, supra.), the purpose of this illicit agreement and formation and operation of the Enterprise was to violate the Plaintiff's rights pursuant to Title 18 USC Section 3192, 31 UST 5059, and the Due Process and Equal Protection Clauses (U.S. Const.) resulting in the life imprisonment of the Plaintiff in a United States federal prison without the jurisdiction to have ever tried, detained, or punished the Plaintiff thereby damaging the Plaintiff in his business and property, all in violation of Title 18 USC Sections 1961 et seq.

TRULINCS 42310080 - BALLOW, HARRIS DEMPSEY - Unit: THP-A-B

-----------------------------------------------------------------------------------------

FROM: 42310080
TO:
SUBJECT: AMENDED COMPLAINT 3
DATE: 03/11/2020 10:24:54 AM

COUNT 2

13. The Plaintiff hereby adopts and incorporates paragraphs 1-12 as written herein according to Rule 10 (F.R.Civ.P.) within this Count 2. The Plaintiff also adopts and incorporates the entire appendix herewith as written herein within this Count 2.

14. The Defendant did knowingly and intentionally conspire with the unnamed United States Officials and unnamed Mexican Officials ALL using their respective Governmental positions of authority, power, and respective official command structures, outside any legal form of authority, and with OTHERS to violate Title 18 USC Sections 1961 et seq. as alleged herein in Count 1. The Defendant did enter into an illicit agreement with unnamed United States Officials and unnamed Mexican Officials and Others as of yet unknown to the Plaintiff, to form and operate an Enterprise as alleged herein above in Count 1. The Defendant did, along with the other members of the Enterprise, personally participate in the operation and management of the Enterprise itself by directing the affairs and or exercising a measure of control over the affairs of the Enterprise. As part of the conspiracy as alleged herein above consisting of the Defendant personally committed violations of hundreds of violations of Title 18 USC Sections 1512(c) and 1952(a) which by their very nature as alleged herein above project into the future the threat of repetition to future persons under the protection of Title 18 USC Section 3192; 31 UST 5059; and the Constitution of the United States of America.

15. The Defendant, the unnamed United States Officials, the unnamed Mexican Officials and OTHERS as of yet unknown to the Plaintiff, DID aid, abet and cause each other to violate the substantive RICO provisions along with the alleged specific predicate acts as alleged herein above and also aided, abetted, and caused each other to conspire to violate the RICO provisions with the specific predicate acts as alleged herein above, ALL IN VIOLATION OF TITLE 18 USC SECTIONS 2; 1512(c); 1952(a); 1961 ET SEQ. FROM 2010 UNTIL PRESENT.

DECLARATORY JUDGMENT

16. The Plaintiff seeks a Declaratory Judgment against the Defendant in accordance with Rule 57 (F.R.Civ.P.).

DAMAGES DEMAND

17. The Plaintiff has been damaged in his business and property in the amount of not less than $100,000,000.00 (U.S. dollars) by the Defendant.

18. The Plaintiff, Harris Dempsey Ballow has sustained specific damages in his business and property and demands punitive, compensatory and special damages as follows:

a) $105,000,000.00 U.S. Dollars compensatory damages for each Count as alleged; and

b) $100,000,000.00 U.S. Dollars punitive damages for each Count as alleged; and

c) $50,000,000.00 U.S. Dollars in special damages for each Count as alleged; and

d) The total damages in accordance with Title 18 USC Section 1964 be treble;

e) any additional relief in accordance with the laws and Constitution of the United States of America.

I, the undersigned hereby certify under penalty of perjury the entire foregoing Complaint to be true, so help me God.

Respectfully Submitted,

*Harris Ballow*

Harris Dempsey Ballow, Plaintiff, Pro se.

Appendix

[Seal of the United Mexican States]
Ministry of Foreign Affairs

1

# RESOLUTION

HAVING REVIEWED for purposes of ruling on the request for **CONSENT TO THE EXCEPTION TO THE RULE OF SPECIALITY** filed by the Government of the United States of America in order that U.S. citizen **HARRIS DEMPSEY BALLOW**, a/k/a "BUTCH BALLOW," a/k/a "DEMPSEY HARRIS," a/k/a "DAVID WOOD," a/k/a "JOE GIBBONS," a/k/a "HARRIS BALLOW," a/k/a "JOED GIBBONS," a/k/a "JOEDAVID GIBBONS," a/k/a "DEMPEY BALLOW HARRIS," a/k/a "DAVID C. WOOD," a/k/a "HARRISBUTCH BALLOW," a/k/a "JOE DAVID GIBBONS," a/k/a "DEMPSEY BALLOW HARRIS," a/k/a "JOHN GILTHORP," a/k/a "JOHN GILL," a/k/a "MELVIN JOHN GELSTHORPE," a/k/a "JOHN GEL," a/k/a "MELVYN JOHN GELSTHORPE," a/k/a "TOM BROWN," a/k/a "BUBBA," a/k/a "MARTIN TWINLEY," a/k/a "MARTIN TWYNLEY," a/k/a "MARTIN TWENGLY," may be prosecuted for crimes in addition to those for which he was surrendered for international extradition, and

# FINDING THAT

1. By agreement dated February 23, 2011, the Government of the United Mexican States **GRANTED** to the Government of the United States of America the international extradition of U.S. citizen **HARRIS DEMPSEY BALLOW**, a/k/a "BUTCH BALLOW," a/k/a

[*signatures*]

[Seal of the United Mexican States]
Ministry of Foreign Affairs

"DEMPSEY HARRIS," a/k/a "DAVID WOOD," a/k/a "JOE GIBBONS," a/k/a "HARRIS BALLOW," a/k/a "JOED GIBBONS," a/k/a "JOEDAVID GIBBONS," a/k/a "DEMPEY BALLOW HARRIS," a/k/a "DAVID C. WOOD," a/k/a "HARRISBUTCH BALLOW," a/k/a "JOE DAVID GIBBONS," a/k/a "DEMPSEY BALLOW HARRIS," a/k/a "JOHN GILTHORP," a/k/a "JOHN GILL," a/k/a "MELVIN JOHN GELSTHORPE," a/k/a "JOHN GEL," a/k/a "MELVYN JOHN GELSTHORPE," a/k/a "TOM BROWN," a/k/a "BUBBA," a/k/a "MARTIN TWINLEY," a/k/a "MARTIN TWYNLEY," a/k/a "MARTIN TWENGLY," to be sentenced by the **Federal District Court for the Southern District of Texas, United States of America,** in Cause No. H-02-729S, in which he pleaded guilty on September 16, 2003 to one count of engaging in a monetary transaction involving property derived from an unlawful fraudulent scheme, in violation of Title 18, United States Code, Section 1957(a).

**2.** Having completed the international extradition process pursuant to the procedures established by law, Mr. **HARRIS DEMPSEY BALLOW,** a/k/a "BUTCH BALLOW," a/k/a "DEMPSEY HARRIS," a/k/a "DAVID WOOD," a/k/a "JOE GIBBONS," a/k/a "HARRIS BALLOW," a/k/a "JOED GIBBONS," a/k/a "JOEDAVID GIBBONS," a/k/a "DEMPEY BALLOW HARRIS," a/k/a "DAVID C. WOOD," a/k/a "HARRISBUTCH BALLOW," a/k/a "JOE DAVID GIBBONS," a/k/a "DEMPSEY BALLOW HARRIS," a/k/a "JOHN GILTHORP," a/k/a "JOHN GILL," a/k/a "MELVIN JOHN GELSTHORPE," a/k/a "JOHN GEL," a/k/a "MELVYN JOHN GELSTHORPE," a/k/a "TOM BROWN," a/k/a "BUBBA," a/k/a "MARTIN TWINLEY," a/k/a "MARTIN TWYNLEY," a/k/a "MARTIN TWENGLY," was surrendered to the U.S. Government on **April 8, 2011** in order to be sentenced by the Federal District Court for the Southern District of Texas.

[Seal of the United Mexican States]
Ministry of Foreign Affairs

3

**3.** By means of diplomatic note No. 16-4620 of December 14, 2016, the Government of the United States of America, through its Embassy in Mexico, submitted to the Government of the United Mexican States (Ministry of Foreign Affairs) the formal request for **CONSENT TO THE EXCEPTION TO THE RULE OF SPECIALITY** in accordance with Article 17(1)(c) of the Extradition Treaty between the United Mexican States and the United States of America, in order to be tried before the **Federal District Court for the Southern District of Texas** pursuant to the Third Superseding Indictment with Cause No. H-10-494-SSS (also referred to as No. 4:10-cr-00494), filed on January 29, 2015, for the following crimes:

- **(1) Count One,** conspiracy to commit fraud by wire transfer in violation of Title 18, United States Code, Sections 1343 and 1349;

- **(2–15 and 54–59) Counts Two through Fifteen and Counts Fifty-four through Fifty-nine,** specific instances of fraud by wire transfer, as well as aiding and abetting these offenses, in violation of Title 18, United States Code, Sections 1343 and 2;

- **(16) Count Sixteen,** conspiracy to commit money laundering offenses in violation of Title 18, United States Code, Section 1956(h).

- **(17–50) Counts Seventeen through Fifty,** specific instances of money laundering, as well as aiding and abetting these

[Seal of the United Mexican States]                                                    4
Ministry of Foreign Affairs

offenses, in violation of Title 18, United States Code, Sections 1957 and 2;

- **(53) Count Fifty-three**, failure to appear to be sentenced, in violation of Title 18, United States Code, Section 3146(a)(1);

- **(60–69) Counts Sixty through Sixty-nine,** specific instances of money laundering, as well as aiding and abetting these offenses, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2;

- **(70–79) Counts Seventy through Seventy-nine**, specific instances of money laundering, as well as aiding and abetting these offenses, in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2; and

- **(80–87) Counts Eighty through Eighty-seven,** specific instances of money laundering, as well as aiding and abetting these crimes, in violation of Title 18, United States Code, Sections 1956(a)(2)(A) and 2.

In that regard, the United States of America, through its Diplomatic Representation, indicated in the aforementioned diplomatic note 16-4620 of December 14, 2016, that Mr. **HARRIS DEMPSEY BALLOW** is not being charged for **Counts Fifty-one and Fifty-two** of the Third Superseding Indictment, and that the United States of America does not intend to try the extraditable subject for **Count Fifty-three.**

[Seal of the United Mexican States]
Ministry of Foreign Affairs

5

4. By means of official correspondence ASJ-42098 dated December 19, 2016, this Ministry of Foreign Affairs asked the Office of the Attorney General of the Republic, in the exercise of its powers and attributions, to issue the opinion it deems appropriate in response to the request for **CONSENT TO THE EXCEPTION TO THE RULE OF SPECIALITY** made by the Government of the United States of America.

5. By means official correspondence No. DGPI/698/17 dated March 15, 2017, the Office of the Attorney General of the Republic, through its Director General of International Proceedings, issued its opinion with regard to the request made by the U.S. Government, stating that it is **appropriate** to grant the request for an **exception to the Rule of Speciality** submitted in order that Mr. **HARRIS DEMPSEY BALLOW**, a/k/a "BUTCH BALLOW," a/k/a "DEMPSEY HARRIS," a/k/a "DAVID WOOD," a/k/a "JOE GIBBONS," a/k/a "HARRIS BALLOW," a/k/a "JOED GIBBONS," a/k/a "JOEDAVID GIBBONS," a/k/a "DEMPEY BALLOW HARRIS," a/k/a "DAVID C. WOOD," a/k/a "HARRISBUTCH BALLOW," a/k/a "JOE DAVID GIBBONS," a/k/a "DEMPSEY BALLOW HARRIS," a/k/a "JOHN GILTHORP," a/k/a "JOHN GILL," a/k/a "MELVIN JOHN GELSTHORPE," a/k/a "JOHN GEL," a/k/a "MELVYN JOHN GELSTHORPE," a/k/a "TOM BROWN," a/k/a "BUBBA," a/k/a "MARTIN TWINLEY," a/k/a "MARTIN TWYNLEY," a/k/a "MARTIN TWENGLY," may be prosecuted on charges other than those for which his extradition was granted under the Order issued on February 23, 2011.

By virtue of the foregoing, and,

## WHEREAS:

**A. COMPETENCE.**

[Seal of the United Mexican States]                                                6
Ministry of Foreign Affairs

**I.** The Minister of Foreign Affairs is competent to hear and decide on this matter under the terms of Article 119, paragraph three of the Political Constitution of the United Mexican States; Article 17(1)(c) of the Extradition Treaty between the Government of the United Mexican States and the Government of the United States of America; Article 28(XI) and (XII) of the Organic Law of the Federal Public Sector; and Article 7(X) of the Internal Regulations of the Ministry of Foreign Affairs.

## B. REQUEST SUBMITTED.

**II.** The Government of the United States of America, through its Embassy in Mexico, has asked the Government of the United Mexican States for its **CONSENT TO THE EXCEPTION TO THE RULE OF SPECIALITY** in order that Mr. **HARRIS DEMPSEY BALLOW**, a/k/a "BUTCH BALLOW," a/k/a "DEMPSEY HARRIS," a/k/a "DAVID WOOD," a/k/a "JOE GIBBONS," a/k/a "HARRIS BALLOW," a/k/a "JOED GIBBONS," a/k/a "JOEDAVID GIBBONS," a/k/a "DEMPEY BALLOW HARRIS," a/k/a "DAVID C. WOOD," a/k/a "HARRISBUTCH BALLOW," a/k/a "JOE DAVID GIBBONS," a/k/a "DEMPSEY BALLOW HARRIS," a/k/a "JOHN GILTHORP," a/k/a "JOHN GILL," a/k/a "MELVIN JOHN GELSTHORPE," a/k/a "JOHN GEL," a/k/a "MELVYN JOHN GELSTHORPE," a/k/a "TOM BROWN," a/k/a "BUBBA," a/k/a "MARTIN TWINLEY," a/k/a "MARTIN TWYNLEY," a/k/a "MARTIN TWENGLY," may be tried before the **Federal District Court for the Southern District of Texas** for crimes other than those for which his extradition was granted, namely as part of the Third Superseding Indictment with Cause No. H-10-494-SSS (also referred to as No. 4:10-cr-00494), filed on January 29, 2015, for the crimes of conspiracy, wire fraud and money laundering, as the facts are different and

[Seal of the United Mexican States]                                                    7
Ministry of Foreign Affairs

because these involve victims others than those listed in the first international extradition request.

In this regard In this regard [*sic*], the requesting State attached to its petition **a summary of the acts with which the requested party is charged**, contained in the affidavit of JOHN R. LEWIS, Assistant United States Attorney in the Southern District of Texas, which states as follows:

**"SUMMARY OF THE FACTS IN THE CASE**

35. The investigation revealed that starting on or about 2004 through July 2010, BALLOW and his co-conspirators devised a scheme to defraud victims by inducing them fraudulently to invest in U.S. publicly traded companies, including: E-SOL International Corporation (E-SOL), a Nevada-based publicly traded company; Medra Corporation (Medra), a Delaware-based publicly traded company, and Aztec Technology Partners (Aztec), a Delaware-based publicly traded company later named Ultimate Lifestyle Corporation (Ultimate Lifestyle). Part of the scheme involved publishing and disseminating false information regarding the operation, control, finances and services of these companies, and to sell shares fraudulently to investors on the basis of this false information so that BALLOW and his co-conspirators could use the investors' money for their own personal use and benefit.

36. In order to execute the fraudulent scheme, BALLOW and his co-conspirators would send messages by e-mail and would publish false information on the internet in connection with the financial statements, projected profits and possible investment opportunities for the companies.

37. In order to attract victims to invest in E-SOL, BALLOW would falsely represent, through e-mail messages and on internet-based publications, that E-SOL was operating an "international country club" and that it was in the process of building a tourist complex called Monarch Cancún Resort. BALLOW represented falsely to investors that progress had been made in the development of the Monarch Cancún Resort tourist complex and that the project was worth $75 million dollars. Once the victims agreed to invest in E-SOL, BALLOW and his co-conspirators would send e-mail messages to the investors with instructions for making a wire transfer, instructing them to deposit funds in a bank account at Wells Fargo Bank N.A. in the United States.

38. In fact, BALLOW had purchased E-SOL in late 2005, and the company had not obtained any of the necessary permits, nor had it even finished the blueprints for building a tourist complex.

[Seal of the United Mexican States]
Ministry of Foreign Affairs

8

39. The investigation revealed that BALLOW and his co-conspirators defrauded their victims of over 55 million dollars using the fraudulent representations associated with E-SOL.

40. Starting in or about 2008, BALLOW and his co-conspirators began defrauding investors through Medra. BALLOW made representations to investors in the United States and Canada, and distributed promotional materials that stated falsely that Medra was offering a product similar to that of E-SOL, in other words, investments in tourist vacation complexes, including the Monarch Cancún complex, and an "international country club" in Puerto Aventuras, Quintana Roo, Mexico. In fact, Medra did not own any vacation clubs, country clubs or any other assets.

41. Once BALLOW and his co-conspirators convinced the victims to invest, using deceit and fraud, they would send the victims e-mail s with wire transfer instructions for making the fraudulent transactions. The victims who agreed to invest in Medra would receive the instructions to make wire transfers of large amounts of money to an account in the name of Medra at the Toronto Dominion Bank in Canada. Those funds were then wired to an account in the name of E- SOL International Corp. at the Wells Fargo Bank N.A. in Reno, Nevada.

42. The investigation revealed that BALLOW and his co-conspirators defrauded their victims of approximately $2.3 million dollars using fraudulent representations associated with Medra.

43. Starting in or about 2009, BALLOW and his co-conspirators began defrauding victims through Ultimate Lifestyle, previously known as Aztec. Just as they had done with E-SOL and Medra, BALLOW and his co-conspirators intentionally distorted, through promotional materials, the status of Ultimate Lifestyle, indicating that it held valuable assets at a vacation complex and offering products similar to those of E-SOL and Medra, namely investments in vacation complexes.

44. In fact, Ultimate Lifestyle possessed [sic], and never acquired, any asset, nor did it generate any income. BALLOW and his co-conspirators prepared fraudulent documents, including certificates signed by individuals who were allegedly executives at Ultimate Lifestyle, who in fact did not exist. BALLOW and his co-conspirators used those fraudulent documents to arrange the sale of shares in Ultimate Lifestyle to investors.

45. The investigation revealed that BALLOW and his co-conspirators defrauded their victims in the amount of approximately $5.4 million dollars using fraudulent representations associated with Ultimate Lifestyle.

46. As part of each of the above schemes, BALLOW and his co-conspirators exchanged e-mail messages with each other containing information on the victims, fraudulent certificates and marketing materials that they would later give their victims.

41 [sic]. In order to carry out all the fraudulent plans and conceal the proceeds obtained fraudulently, BALLOW and one of his co-conspirators, Rubén Garza Pérez (Garza Pérez), laundered the funds they received from the victims. BALLOW and Garza Pérez created and acquired shell companies in foreign countries and opened accounts for those companies at brokerage agencies in the United States and abroad. Then BALLOW and Garza Pérez would cause the accounts

[Seal of the United Mexican States]
Ministry of Foreign Affairs

to sell shares of E-SOL and Medra on the over-the-counter (OTC) securities market. After the shares were sold, the proceeds were laundered once again through wire transfers to bank accounts held in the names of various shell companies in Belize, Mexico and Panama.

48. The investigation revealed that the proceeds of the fraud were used to promote the scheme and for the personal benefit of BALLOW and his co-conspirators.

49. By means of the fraudulent scheme, BALLOW and his co-conspirators used several aliases to conceal their identities from the victims and the authorities.

50. I have attached to this affidavit as **Exhibit D** the original affidavit of Special Agent Kendall Hopper of the Federal Bureau of Investigation. In his affidavit, Special Agent Hopper summarizes the fraudulent scheme and money laundering in which BALLOW was involved and the evidence that led to the charges in this case. Included in the affidavit by Special Agent Hopper, and as part of this extradition request, are copies of the e-mail messages and records of the financial transactions and wire transfer notices that support the charges against BALLOW.

51. In addition, I have attached the statement by the victim Charles Keith Cox (**Exhibit E**), in which he provides further details regarding BALLOW's involvement in the fraudulent scheme and money laundering. The narrative by Mr. Cox is representative of the hundreds of other victims whom BALLOW defrauded.

(…)"

## C. INTERNATIONAL OBLIGATION.

**III.** This extradition request is based on Article 17(1)(c) of the Extradition Treaty between the United Mexican States and the United States of America, which literally reads:

### "ARTICLE 17:

### Rule of Speciality

1. A person extradited under the present Treaty shall not be detained, tried or punished in the territory of the requesting Party for an offense other than that for which extradition has been granted nor be extradited by that Party to a third State unless:

a) He has left the territory of the requesting Party after his extradition and has voluntarily returned to it;
b) He has not left the territory of the requesting Party within 60 days after being free to do so; or

[Seal of the United Mexican States]
Ministry of Foreign Affairs

10

c) The requested Party has given its consent to his detention, trial, punishment or extradition to a third State for an offense other than that for which the extradition was granted.

These stipulations shall not apply to offenses committed after the extradition.

2. If, in the course of the procedure, the classification of the offense is changed for which the person requested was extradited, he shall be tried and sentenced on the condition that the offense, in its new legal form:

a) Is based on the same group of facts established in the request for extradition and in the documents presented in its support; and
b) Is punishable with the same maximum sentence as the crime for which he was extradited or with a lesser sentence."

Along those lines, Article One of the applicable bilateral treaty enshrines the agreement between the two nations to be obligated to mutually extradite, subject to the provisions of this Treaty, any person who is requested by virtue of a warrant duly issued for his or her arrest by their competent judicial authorities as a result of an offense committed within the territory of the Requesting Party, and is reproduced as follows:

## "ARTICLE 1

### Obligation to Extradite

1. The Contracting Parties agree to mutually extradite, subject to the provisions of this Treaty, persons who the competent authorities of the requesting Party have charged with an offense or have found guilty of committing an offense, or are wanted by said authorities to complete a judicially pronounced penalty of deprivation of liberty for an offense committed within the territory of the requesting Party.

2. For an offense committed outside the territory of the requesting Party, the requested Party shall grant extradition if:

a) its laws would provide for the punishment of such an offense committed in similar circumstances, or
b) the person sought is a national of the requesting Party, and that Party has jurisdiction under its own laws to try that person."

[Seal of the United Mexican States]                                            11
Ministry of Foreign Affairs

### D. OPINION OF THE OFFICE OF THE ATTORNEY GENERAL OF THE REPUBLIC.

    **IV**. By means of official correspondence No. DGPI/698/17 of March 15, 2017, the Office of the Attorney General of the Republic, through its Director General of International Proceedings, issued its opinion with regard to the request made by the U.S. Government, stating that it is **appropriate** to grant the request for an **exception to the Rule of Speciality** submitted in order that Mr. **HARRIS DEMPSEY BALLOW**, a/k/a "BUTCH BALLOW," a/k/a "DEMPSEY HARRIS," a/k/a "DAVID WOOD," a/k/a "JOE GIBBONS," a/k/a "HARRIS BALLOW," a/k/a "JOED GIBBONS," a/k/a "JOEDAVID GIBBONS," a/k/a "DEMPEY BALLOW HARRIS," a/k/a "DAVID C. WOOD," a/k/a "HARRISBUTCH BALLOW," a/k/a "JOE DAVID GIBBONS," a/k/a "DEMPSEY BALLOW HARRIS," a/k/a "JOHN GILTHORP," a/k/a "JOHN GILL," a/k/a "MELVIN JOHN GELSTHORPE," a/k/a "JOHN GEL," a/k/a "MELVYN JOHN GELSTHORPE," a/k/a "TOM BROWN," a/k/a "BUBBA," a/k/a "MARTIN TWINLEY," a/k/a "MARTIN TWYNLEY," a/k/a "MARTIN TWENGLY," may be prosecuted on charges other than those for which his extradition was granted under the Order issued on February 23, 2011, indicating the following literal quotation:

> "This is in reference to official correspondence ASJ-42098 and ASJ-06671 dated December 19, 2016 and February 22, 2017, respectively, in which this General Directorate of International Proceedings was asked to give an opinion on the request for consent sent by the Government of the United States of America to the Government of the United Mexican States in order that it may prosecute HARRIS DEMPSEY BALLOW for charges in addition to those for which his extradition was granted. This Administrative Unit deems it appropriate to grant consent to prosecute HARRIS DEMPSEY BALLOW for the following reasons:
>
> In diplomatic note 2480 dated September 8, 2010, the Government of the United States of America filed the formal request for the extradition of HARRIS DEMPSEY BALLOW in order to be sentenced by the Federal District Court for the Southern District of Texas in Cause No. H-02-7295, in which he pleaded guilty on September 16, 2003 to one count of engaging in a monetary transaction using property derived from an unlawful fraudulent scheme. By agreement dated February 23, 2011, that Ministry of Foreign Affairs granted the extradition of HARRIS

[Seal of the United Mexican States]                                        12
Ministry of Foreign Affairs

DEMPSEY BALLOW. Once the agreement became final, the person requested was extradited on April 8, 2011

Subsequently, by means of diplomatic note 16-4620 dated December 14, 2016, the Government of the United States of America sent the Government of the United Mexican States, through its Ministry of Foreign Affairs, a request for consent to the exception to the Rule of Speciality in order that the extradited person could be prosecuted under a superseding indictment filed in the Federal District Court for the Southern District of Texas for the following charges:

### United States Code

*Count One, conspiracy to commit wire fraud.*

*Counts Two through Fifteen and Counts Fifty-four through Fifty-nine, specific instances of fraud by wire transfer, as well as aiding and abetting these offenses.*

*Count Sixteen, conspiracy to commit money laundering offenses.*

*Counts Seventeen through Fifty, specific instances of money laundering, as well as aiding and abetting these offenses.*

*Counts Sixty through Sixty-nine, specific instances of money laundering, as well as aiding and abetting these offenses.*

*Counts Seventy through Seventy-nine, specific instances of money laundering; and*

*Counts Eighty through Eight-seven, specific instances of money laundering.*

To that end, attached is a description of the acts with which HARRIS DEMPSEY BALLOW is charged, and of the corresponding evidence, which must be analyzed in order to verify that the requirement of double criminality is met as established by Article 2 of the Extradition Treaty between the United States of America and the United Mexican States, which provides that extradition shall take place for acts that are punishable under the federal laws of both countries, whether or not they are included in the Appendix to the Treaty.

In this case, the unlawful acts attributed to the extradited party by the Government of the United States of America are punishable under the laws of both countries, and the penalty is not less than one year of deprivation of liberty, as stated here:

### Federal Criminal Code

### Fraud

[Seal of the United Mexican States]                                                                              13
Ministry of Foreign Affairs

*Article 386. Whoever appropriates any item unlawfully, or obtains improper gain, by deceiving a person or taking advantage of an error into which such person may have fallen, commits the crime of fraud.*

*The crime of fraud shall be punished by the following sentences [...]*

*III - Three to twelve years of imprisonment and a fine of up to one hundred twenty times the [prevailing minimum] wage, if the value of the fraud is greater than five hundred times the [prevailing minimum] wage.*

*Transactions involving resources derived from unlawful activities*

*Article 400 Bis. Whoever engages in any of the following conduct, either directly or through an intermediary, shall be sentenced to five to fifteen years of imprisonment and to a fine of one thousand to five thousand days:*
*I. Acquires, conveys, administers, holds, possesses, exchanges, converts, deposits, withdraws, gives or receives for any reason; invests, signs over, transports or transfers, within the national territory, or from the national territory abroad, or the reverse; any ownership interest or property of any nature, with the knowledge that they are derived from or represent the proceeds of an unlawful activity; or*

*II. Conceals, covers up or attempts to conceal or cover up the nature, origin, location, destination, movement, ownership or title to resources, ownership interest or property, with knowledge that they are derived from or represent the proceeds of an unlawful activity.*

*For the purposes of this Chapter, proceeds of an unlawful activity shall be understood to mean any resources, ownership interest or property of any nature, when there is probable cause or certainty that these are directly or indirectly derived, or represent the profits derived, from the commission of any crime, and their legitimate origin cannot be established. [...]*

*Conspiracy*

*Article 164. Whoever forms a part of an association or group of three or more individuals for the purpose of committing crimes shall be sentenced to five to ten years of imprisonment and to a fine of one hundred to three hundred days."*

The requesting government indicates that the acts with which **HARRIS DEMPSEY BALLOW** is charged are that *during the years from 2004 to 2010, while a fugitive from justice in Mexico, he concealed his identity and used various names, depending on his location; acting together with other co-conspirators they created fictitious companies that traded on the U.S. stock market, lacking the necessary operating permits, and that in order to attract investors he distributed false and misleading information over the internet related to the financial status, control and services of those companies, indicating that they possessed valuable assets; preparing fraudulent documents*

[Seal of the United Mexican States]                                                    14
Ministry of Foreign Affairs

*including certificates signed by individuals who were allegedly executives at the*
*company, who in fact did not exist, and once they would convince the victims to invest in*
*false tourist vacation complexes he would send e-mail s containing instructions for the*
*wire transfers needed in order to perform the fraudulent transactions.*

According to the above description, the acts that led to the additional charges indicated in
superseding indictment H-10-494-SSS, probably committed by **HARRIS DEMPSEY**
**BALLOW**, are punishable under the laws of both parties by deprivation of liberty, the
maximum of which is not less than one year, since in accordance with the text of Article
386 of the Federal Criminal Code transcribed above, in the case of fraud it states that a
sentence of three to twelve years of imprisonment and up to one hundred twenty times
the [prevailing minimum wage] shall be imposed if the value of the fraud is greater than
five hundred times the [prevailing minimum] wage, and taking into account the fact that
the amount of the fraud committed by **HARRIS DEMPSEY BALLOW** totals 32 million
dollars, in other words, forty thousand times the minimum wage, approximately, this
amount is more than five hundred times the wage indicated in our criminal legislation to
punish whoever has committed fraud.

By the same token, Article 400 Bis of the same Code establishes that a sentence of five to
fifteen years of imprisonment and a fine of one thousand to five thousand days shall be
imposed upon anyone who *acquires, conveys, administers, holds, possesses, exchanges,*
*converts, deposits, withdraws, gives or receives for any reason; invests, signs over,*
*transports or transfers, within the national territory, or from the national territory*
*abroad, or the reverse; any ownership interest or property of any nature, with the*
*knowledge that they are derived from or represent the proceeds of an unlawful activity.*

With regard to the laws of the United States of America governing charges of fraud,
money laundering and conspiracy, under the terms of Title 18, United States Code,
Sections 1343, 1349, 1956 and 1957, the maximum penalty for those crimes is 20 years.

With regard to the statute of limitations for criminal prosecution, under Article 110 of the
Federal Criminal Code, the statute of limitations has not expired given that those acts
punishable under Articles 386, 400 bis and 164 state that a sentence of 5 to 15 years shall
be imposed for the crime of transactions involving resources of unlawful origin, 3 to 12
years for the crime of fraud, and 5 to 10 years for the crime of conspiracy, and the
arithmetic mean for the crime of transactions involving resources of unlawful origin is 10
years; 7 years 5 months for the crimes of fraud and conspiracy. Taking as a baseline the
fact that the last criminal act was committed during the month of July 2010, the statute of
limitations applicable to these crimes has not expired under Mexican criminal law.

A reading and comparative analysis of both sets of legislation shows that there is
similarity between these conducts, which are regulated and punishable by penalties of
deprivation of liberty greater than one year, and that the applicable statute of limitations
has not expired; moreover, they are not punishable by the

[Seal of the United Mexican States]                                                    15
Ministry of Foreign Affairs

death penalty nor are they political and/or military crimes nor does the principle of *non bis in idem* apply.

It should be noted that the unlawful acts committed by **HARRIS DEMPSEY BALLOW** are other than those that gave rise to his extradition, which occurred under different circumstances in terms of time, method and place. In these new charges, the defendant conspired with others to engage in multiple fraudulent schemes and defrauded hundreds of investors who wired large amounts of money from bank accounts in Canada, Italy, Mexico, Panama, Switzerland and the United States.

Pursuant to Article 17(1)(c) of the Extradition Treaty between the United Mexican States and the United States of America, this public office finds it appropriate to grant consent to the exception to the Rule of Speciality in order that the Government of the United States of America may prosecute **HARRIS DEMPSEY BALLOW** for the additional charges filed in the superseding indictment under Cause No. H-10-494-SSS (also referred to as No. 4:10-CR-00494), which are other than those set forth in the formal petition for international extradition that led to the surrender in extradition of the defendant, unless the Ministry of Foreign Affairs finds otherwise.
(...)"

## E. ANALYSIS OF THE REQUEST.

**V.** In its request for **CONSENT TO THE EXCEPTION TO THE RULE OF SPECIALITY**, the Government of the United States of America mentions that it has an additional case against the extradited person for crimes other than those for which his international extradition was granted, namely Cause No. H-02-729S, in which he pleaded guilty on September 16, 2003 to a charge of engaging in a monetary transaction involving property derived from an unlawful fraudulent scheme. Therefore, the following is taken into consideration:

**1.** The request for **CONSENT TO THE EXCEPTION TO THE RULE OF SPECIALITY** was filed through diplomatic channels, as was the documentation in support of the petition, as evident in

[Seal of the United Mexican States]                                    16
Ministry of Foreign Affairs

diplomatic note No. 16-4620 dated December 14, 2016, which the Government of the United States of America, through its Embassy, sent to the Government of Mexico.

    2. The requesting State attached to its petition a description of the acts with which **HARRIS DEMPSEY BALLOW**, a/k/a "BUTCH BALLOW," a/k/a "DEMPSEY HARRIS," a/k/a "DAVID WOOD," a/k/a "JOE GIBBONS," a/k/a "HARRIS BALLOW," a/k/a "JOED GIBBONS," a/k/a "JOEDAVID GIBBONS," a/k/a "DEMPEY BALLOW HARRIS," a/k/a "DAVID C. WOOD," a/k/a "HARRISBUTCH BALLOW," a/k/a "JOE DAVID GIBBONS," a/k/a "DEMPSEY BALLOW HARRIS," a/k/a "JOHN GILTHORP," a/k/a "JOHN GILL," a/k/a "MELVIN JOHN GELSTHORPE," a/k/a "JOHN GEL," a/k/a "MELVYN JOHN GELSTHORPE," a/k/a "TOM BROWN," a/k/a "BUBBA," a/k/a "MARTIN TWINLEY," a/k/a "MARTIN TWYNLEY," a/k/a "MARTIN TWENGLY," is charged, in order that he may be prosecuted for crimes other than those for which his extradition was granted, which are contained in the petition from the **Federal District Court for the Southern District of Texas**, which is attached to its petition for consent.

    3. The requesting Government attached a certified copy of the arrest warrant dated January 29, 2015, which was issued for Mr. **HARRIS DEMPSEY BALLOW**, a/k/a "BUTCH BALLOW," a/k/a "DEMPSEY HARRIS," a/k/a "DAVID WOOD," a/k/a "JOE GIBBONS," a/k/a "HARRIS BALLOW," a/k/a "JOED GIBBONS," a/k/a "JOEDAVID GIBBONS," a/k/a "DEMPEY BALLOW HARRIS," a/k/a "DAVID C. WOOD," a/k/a "HARRISBUTCH BALLOW," a/k/a "JOE DAVID GIBBONS," a/k/a "DEMPSEY BALLOW HARRIS," a/k/a "JOHN GILTHORP," a/k/a "JOHN GILL," a/k/a "MELVIN JOHN GELSTHORPE," a/k/a "JOHN GEL," a/k/a "MELVYN JOHN GELSTHORPE," a/k/a "TOM BROWN," a/k/a "BUBBA," a/k/a "MARTIN TWINLEY," a/k/a "MARTIN TWYNLEY," a/k/a "MARTIN TWENGLY," to be prosecuted under the Third Superseding Indictment with

[Seal of the United Mexican States]                                                                 17
Ministry of Foreign Affairs

Cause No. H-10-494-SSS (also referred to as No. 4:10-cr-00494), filed on January 29, 2015, for the crimes of conspiracy, wire fraud and money laundering.

**4.** The petitioning State attached the **text of the legal provisions** applicable to the crimes with which he is charged; the legal provisions that determine the punishment for the unlawful acts and the text of the legal provisions associated with the statute of limitations under the applicable laws of the Requesting State.

**5.** With regard to the stipulations of Article 10(3)(b) in relation to Article 3 of the Extradition Treaty between the United Mexican States and the United States of America, the Government of the United States of America **attached sufficient evidence to justify the arrest and prosecution** of the person requested, in which it is shown that the Government of the United States of America sent a variety of documents and statements made before the **Federal District Court for the Southern District of Texas**, which are listed as follows:

A. Affidavit of the Assistant United States Prosecutor for the Southern District of Texas, United States of America.

B. Certified copy of the Third Superseding Indictment filed by the Grand Jury on January 29, 2015 before the **Federal District Court for the Southern District of Texas**.

C. Certified copy of the **arrest warrant** issued for the person requested on ***January 29, 2015,*** by the **Federal District Court for the Southern District of Texas, United States of America**, under the Third Superseding Indictment with Cause No. H-10-494-SSS.

D. Affidavit of Special Agent Kendall Hopper of the Federal Bureau of Investigation. **(Exhibit D).**

[Seal of the United Mexican States]                                                        18
Ministry of Foreign Affairs

**Attachment D-1.** Copy of the e-mail message dated July 1, 2009 from Hudgens to Hudgson. (Count Eleven)

**Attachment D-2.** Copy of the record of the wire transfer dated July 17, 2009 for $5 million dollars. (Count Twelve)

**Attachment D-3.** Copy of the record of the wire transfer dated July 25, 2008 for $30,000 dollars. (Count Two)

**Attachment D-4.** Copy of the record of the wire transfer dated August 12, 2008 for $35,985 million dollars [*sic*] (Count Three)

**Attachment D-5.** Copy of the record of the wire transfer dated March 9, 2009 for $65,985 dollars (Count Eight)

**Attachment D-6.** Copy of the record of the wire transfer dated April 1, 2009 for $30,000 dollars (Count Nine)

**Attachment D-7.** Copy of a financial statement for E-SOL, including the signature page, that was sent by e-mail on November 9, 2009 (Count Fourteen).

**Attachment D-8.** Copy of the record of the wire transfer dated October 31, 2008 for $500,000 dollars (Count Four)

**Attachment D-9.** Copy of the record of the wire transfer dated November 28, 2008 for $500,000 dollars (Count Five)

**Attachment D-10.** Copy of the record of the wire transfer dated December 29, 2008 for $300,000 dollars (Count Six)

**Attachment D-11.** Copy of the record of the wire transfer dated January 29, 2009 for $800,000 dollars (Count Seven)

**Attachment D-12.** Copy of the record of the wire transfer dated April 28, 2009 for $220,000 dollars (Count Ten)

**Attachment D-13.** Copy of the e-mail message dated March 2, 2010 from BALLOW to Lanier (Count Fifteen)

**Attachment D-14.** Copy of the e-mail message dated October 19, 2009 from ANUTH to Cox (Count Thirteen)

[Seal of the United Mexican States]
Ministry of Foreign Affairs

19

**Attachment D-15.** Copy of an e-mail message dated March 16, 2010 from Budai to Garza Pérez (Count Fifty-four).

**Attachment D-16.** Copy of an e-mail message dated March 17, 2010 from Budai to Garza Pérez (Count Fifty-five).

**Attachment D-17.** Copy of an e-mail message dated April 19, 2010 from Budai to Garza Pérez (Count Fifty-six).

**Attachment D-18.** Copy of an e-mail message dated April 26, 2010 from Budai to BALLOW and Garza Pérez (Count Fifty-seven).

**Attachment D-19.** Copy of an e-mail message dated April 30, 2010 from Budai to Garza Pérez (Count Fifty-eight).

**Attachment D-20.** Copy of an e-mail message dated July 4, 2010 from Albert Budai to Harless (Count Fifty-nine).

**Attachment D-21.** Copy of a letter of authorization dated September 14, 2006 to make a wire transfer of $23,000 dollars (Count Seventeen).

**Attachment D-22.** Copy of a letter of authorization dated September 28, 2006 to make a wire transfer of $16,000 dollars (Count Eighteen).

**Attachment D-23.** Copy of a letter of authorization dated November 27, 2006 to make a wire transfer of $30,000 dollars (Count Nineteen).

**Attachment D-24.** Copy of a letter of authorization dated November 30, 2006 to make a wire transfer of $40,000 dollars (Count Twenty).

**Attachment D-25.** Copy of a letter of authorization dated December 14, 2006 to make a wire transfer of $40,000 dollars (Count Twenty-one).

**Attachment D-26.** Copy of a letter of authorization dated December 19, 2006 to make a wire transfer of $40,000 dollars (Count Twenty-two).

[Seal of the United Mexican States]  20
Ministry of Foreign Affairs

**Attachment D-27.** Copy of a letter of authorization dated December 28, 2006 to make a wire transfer of $50,000 dollars (Count Twenty-three).

**Attachment D-28.** Copy of a letter of authorization dated January 5, 2007 to make a wire transfer of $50,000 dollars (Count Twenty-four).

**Attachment D-29.** Copy of a letter of authorization dated January 26, 2007 to make a wire transfer of $30,000 dollars (Count Twenty-five).

**Attachment D-30.** Copy of a letter of authorization dated February 16, 2007 to make a wire transfer of $50,000 dollars (Count Twenty-six).

**Attachment D-31.** Copy of a letter of authorization dated February 22, 2007 to make a wire transfer of $50,000 dollars (Count Twenty-seven).

**Attachment D-32.** Copy of a letter of authorization dated March 2, 2007 to make a wire transfer of $50,000 dollars (Count Twenty-eight).

**Attachment D-33.** Copy of a letter of authorization dated March 13, 2007 to make a wire transfer of $50,000 dollars (Count Twenty-nine).

**Attachment D-34.** Copy of a letter of authorization dated March 26, 2007 to make a wire transfer of $45,000 dollars (Count Thirty).

**Attachment D-35.** Copy of a letter of authorization dated April 26, 2007 to make a wire transfer of $50,000 dollars (Count Thirty-one).

**Attachment D-36.** Copy of a letter of authorization dated March 19, 2008 to make a wire transfer of $200,000 dollars (Count Thirty-two).

**Attachment D-37.** Copy of a letter of authorization dated March 31, 2008 to make a wire transfer of $200,000 dollars (Count Thirty-three).

[Seal of the United Mexican States]
Ministry of Foreign Affairs

**Attachment D-38.** Copy of a letter of authorization dated April 21, 2008 to make a wire transfer of $300,000 dollars (Count Thirty-four).

**Attachment D-39.** Copy of a letter of authorization dated April 24, 2008 to make a wire transfer of $200,000 dollars (Count Thirty-five).

**Attachment D-40.** Copy of a letter of authorization dated October 29, 2008 to make a wire transfer of $30,000 dollars (Count Thirty-six).

**Attachment D-41.** Copy of a letter of authorization dated April 2, 2009 to make a wire transfer of $250,000 dollars (Count Thirty-seven).

**Attachment D-42.** Copy of a letter of authorization dated May 18, 2009 to make a wire transfer of $350,000 dollars (Count Thirty-eight).

**Attachment D-43.** Copy of a letter of authorization dated July 7, 2009 to make a wire transfer of $100,000 dollars (Count Thirty-nine).

**Attachment D-44.** Copy of a letter of authorization dated July 15, 2009 to make a wire transfer of $300,000 dollars (Count Forty).

**Attachment D-45.** Copy of the record of the wire transfer dated July 20, 2009 for $200,000 (Count Forty-one).

**Attachment D-46.** Copy of the record of the wire transfer dated July 28, 2009 for $200,000 (Count Forty-two).

**Attachment D-47.** Copy of the record of the wire transfer dated August 3, 2009 for $500,000 (Count Forty-three).

**Attachment D-48.** Copy of the record of the wire transfer dated August 4, 2009 for $500,000 (Count Forty-four).

**Attachment D-49.** Copy of the record of the wire transfer dated August 5, 2009 for $300,000 (Count Forty-five).

[Seal of the United Mexican States]
Ministry of Foreign Affairs

**Attachment D-50.** Copy of the record of the wire transfer dated September 21, 2009 for $300,000 (Count Forty-six).

**Attachment D-51.** Copy of the record of the wire transfer dated September 22, 2009 for $50,000 (Count Forty-seven).

**Attachment D-52.** Copy of the record of the wire transfer dated November 30, 2009 for $200,000 (Count Forty-eight).

**Attachment D-53.** Copy of the record of the wire transfer dated February 5, 2010 for $100,000 (Count Forty-nine).

**Attachment D-54.** Copy of the record of the wire transfer dated February 24, 2010 for $50,000 (Count Fifty).

**Attachment D-55.** Copy of the record of the wire transfer dated July 20, 2009 for $10,000 (Count Sixty).

**Attachment D-56.** Copy of the record of the wire transfer dated July 30, 2009 for $300,000 (Count Fifty-eight).

**Attachment D-57.** Copy of the record of the wire transfer dated July 30, 2009 for $2,500 (Count Sixty-two).

**Attachment D-58.** Copy of the record of the wire transfer dated July 30, 2009 for $2,500 (Count Sixty-three).

**Attachment D-59.** Copy of the record of the wire transfer dated October 29, 2009 for $75,000 (Count Sixty-four).

**Attachment D-60.** Copy of the record of the wire transfer dated February 25, 2010 for $1,000 (Count Sixty-five).

**Attachment D-61.** Copy of the record of the wire transfer dated February 26, 2010 for $10,000 (Count Sixty-six).

**Attachment D-62.** Copy of the record of the wire transfer dated February 26, 2010 for $4,500 (Count Sixty-seven).

**Attachment D-63.** Copy of the record of the wire transfer dated February 26, 2010 for $2,500 (Count Sixty-eight).

**Attachment D-64.** Copy of the record of the wire transfer dated June 30, 2010 for $7,500 (Count Sixty-nine).

[Seal of the United Mexican States]                                              23
Ministry of Foreign Affairs

**Attachment D-65.** Copy of the record of the wire transfer dated July 23, 2009 for $3,000 (Count Seventy).

**Attachment D-66.** Copy of the record of the wire transfer dated July 24, 2009 for $5,000 (Count Seventy-one).

**Attachment D-67.** Copy of the record of the wire transfer dated July 30, 2009 for $7,500 (Count Seventy-two).

**Attachment D-68.** Copy of the record of the wire transfer dated July 30, 2009 for $5,000 (Count Seventy-three).

**Attachment D-69.** Copy of the record of the wire transfer dated August 3, 2009 for $8,000 (Count Seventy-four).

**Attachment D-70.** Copy of the record of the wire transfer dated August 3, 2009 for $3,000 (Count Sixty-five) [*sic*].

**Attachment D-71.** Copy of the record of the wire transfer dated August 4, 2009 for $4,000 (Count Sixty-six) [*sic*].

**Attachment D-72.** Copy of the record of the wire transfer dated August 5, 2009 for $250,000 (Count Sixty-seven) [*sic*].

**Attachment D-73.** Copy of the record of the wire transfer dated June 30, 2010 for $5,000 (Count Sixty-eight) [*sic*].

**Attachment D-74.** Copy of the record of the wire transfer dated June 30, 2010 for $5,000 (Count Sixty-nine) [*sic*].

**Attachment D-75.** Copy of a letter of authorization dated February 8, 2010 to make a wire transfer of $10,000 dollars (Count Eighty).

**Attachment D-76.** Copy of a letter of authorization dated March 3, 2010 to make a wire transfer of $20,000 dollars (Count Eighty-one).

**Attachment D-77.** Copy of a letter of authorization dated April 28, 2010 to make a wire transfer of $50,000 dollars (Count Eighty-two).

[Seal of the United Mexican States]                                                      24
Ministry of Foreign Affairs

**Attachment D-78.** Copy of a letter of authorization dated May 4, 2010 to make a wire transfer of $60,000 dollars (Count Eighty-three).

**Attachment D-79.** Copy of a letter of authorization dated May 4, 2010 to make a wire transfer of $20,000 dollars (Count Eighty-four).

**Attachment D-80.** Copy of a letter of authorization dated May 12, 2010 to make a wire transfer of $90,000 dollars (Count Eighty-five).

**Attachment D-81.** Copy of a letter of authorization dated June 1, 2010 to make a wire transfer of $20,000 dollars (Count Eighty-six).

**Attachment D-82.** Copy of a Wells Fargo bank statement for June 2010 (Count Eighty-seven).

**Attachment D-83.** Photograph of HARRIS DEMPSEY BALLOW.

E        Statement by Charles Cox. **(Exhibit E)**

    Attachment E-1        Photograph of **HARRIS DEMPSEY BALLOW.**


**F. EXAMINATION OF THE EQUIVALENCY OF THE RULE.**


**VI.** We proceed to verify whether the acts with which Mr. **HARRIS DEMPSEY BALLOW,** a/k/a "BUTCH BALLOW," a/k/a "DEMPSEY HARRIS," a/k/a "DAVID WOOD," a/k/a "JOE GIBBONS," a/k/a "HARRIS BALLOW," a/k/a "JOED GIBBONS," a/k/a "JOEDAVID GIBBONS," a/k/a "DEMPEY BALLOW HARRIS," a/k/a "DAVID C. WOOD," a/k/a "HARRISBUTCH BALLOW," a/k/a "JOE DAVID GIBBONS," a/k/a "DEMPSEY BALLOW HARRIS," a/k/a "JOHN GILTHORP," a/k/a "JOHN GILL," a/k/a "MELVIN JOHN GELSTHORPE," a/k/a "JOHN GEL," a/k/a "MELVYN JOHN GELSTHORPE," a/k/a "TOM BROWN," a/k/a "BUBBA," a/k/a "MARTIN TWINLEY," a/k/a "MARTIN TWYNLEY," a/k/a "MARTIN TWENGLY," is charged and may be prosecuted in accordance with the Third Superseding Indictment with

[Seal of the United Mexican States]
Ministry of Foreign Affairs

25

Cause No. H-10-494-SSS (also referred to as No. 4:10-cr-00494), which was filed on January 29, 2015 for the crimes of conspiracy, wire fraud and money laundering, are punishable under Mexican law by deprivation of liberty for a maximum of not less than one year: intentional or negligent acts that are punishable under the laws of both Parties will likewise be extraditable. In light of the foregoing, and in order to ensure that fugitives from justice do not benefit from impunity, which has a bearing on this case in order to rule on the appropriateness of prosecuting **HARRIS DEMPSEY BALLOW**, as required under Article 2(1) and (3) of the Extradition Treaty between the United Mexican States and the United States of America, a provision that is reproduced as follows:

## "ARTICLE 2

### Extraditable Offenses

1. Extradition shall take place, subject to this Treaty, for wilful acts which fall within any of the clauses of the Appendix and are punishable in accordance with the laws of both Contracting Parties by deprivation of liberty the maximum of which shall be not less than one year.

2. If extradition is requested for the execution of a sentence, there shall be the additional requirement that the part of the sentence remaining to be served shall not be less than six months.

3. Extradition shall also be granted for wilful acts which, although not being included in the Appendix, are punishable, in accordance with the federal laws of both Contracting Parties, by a deprivation of liberty the maximum of which shall be not less than one year.

4. Subject to the conditions established in paragraphs 1, 2 and 3, extradition shall also be granted:

a) For an attempt to commit an offense; conspiracy to commit an offense; or the participation in the execution of an offense; or

b) When, for the purpose of granting jurisdiction to the United States government, transportation of persons or property, the use of the mail or other means of carrying out interstate or foreign commerce, is also an element of the offense."

[Seal of the United Mexican States]
Ministry of Foreign Affairs

26

Given that **Counts One** and **Sixteen** are associated with **conspiracy**, since the person requested, together with other co-conspirators, devised a scheme to defraud the victims, this conduct is defined and punished under Article 164 of the Federal Criminal Code in force at the time of the acts charged, by indicating that whoever forms a part of an association or group of three or more individuals for the purpose of committing crimes shall be sentenced to **five to ten years of imprisonment**. This article provides the following:

*FEDERAL CRIMINAL CODE*

*CHAPTER IV*
*Conspiracies*

*"**Article 164**. Whoever forms a part of an **association** or group of three or more individuals for the purpose of committing crimes shall be sentenced to **five to ten years** of imprisonment and to a fine of one hundred to three hundred days.*

*(...)"*

Moreover, with regard to **Counts One, Two through Fifteen and Fifty-four through Fifty-nine**, **wire fraud**, with which the extradited party is charged by virtue of the fact that he, together with his co-conspirators, would induce his victims to invest in U.S. publicly traded companies, fraudulently selling shares on the basis of false information, this conduct is defined and punished under Article 386(III) of the Federal Criminal Code in force at the time of the events, whereby whoever deceives another or takes advantage of an error into which such person may have fallen and thereby obtains from such person a sum of money or any other gain, issuing or endorsing over to him or her, in his or her own name or in the name of another, a nominative document or one made out to the bearer, against an assumed person or someone whom the grantor knows should not be paid, commits conduct punishable by a sentence of **3 to 12 years of imprisonment**. The provision reads as follows:

[Seal of the United Mexican States]
Ministry of Foreign Affairs

27

## "*FEDERAL CRIMINAL CODE*

### CHAPTER III
### Fraud

**ARTICLE 386.** Whoever appropriates any item unlawfully, or obtains improper gain, by deceiving a person or taking advantage of an error into which such person may have fallen, commits the crime of fraud.

The crime of fraud shall be punished by the following sentences:

I. Three days to 6 months of imprisonment or a fine of 30 to 180 days, if the value of the fraud is not greater than ten times the [prevailing minimum] wage;

II. Six months to 3 years of imprisonment and a fine of 10 to 100 times the [prevailing minimum] wage, if the value of the fraud is greater than 10 but not greater than 500 times the [prevailing minimum] wage;

**III. Three to twelve years of imprisonment and a fine of up to one hundred twenty times the [prevailing minimum] wage, if the value of the fraud is greater than five hundred times the [prevailing minimum] wage.**

**ARTICLE 387.** The same penalties indicated in the preceding article shall be imposed:

I. Upon anyone who obtains money, securities or any other item by offering to assume the defense of a defendant or a prisoner, or the direction or sponsorship of a civil or administrative matter, if he or she fails to assume the former or fails to perform the latter, either because he or she did not legally assume such role, or because he or she withdraws or abandons the business or the cause on insufficient grounds;

II. Upon anyone who conveys any item for consideration knowing that he or she has no right to dispose of such item, or otherwise leases, mortgages, pawns or encumbers such item, if he or she has received the price, lease payment, encumbrance amount, a part of these, or equivalent proceeds;

**III. Upon anyone who obtains a sum of money or any other gain from another, issuing or endorsing over to him or her, in his or her own name or in the name of another, a nominative document or one made out to the bearer, against an assumed person or someone whom the grantor knows should not be paid;**
(...)"

Moreover, with regard to the conduct allegedly engaged in by the person requested in **Counts Seventeen through Fifty; Sixty through Sixty-nine; Seventy through Seventy-nine and Eighty through Eighty-seven** in the Third Superseding Indictment with Cause No. H-10-494-SSS

[Seal of the United Mexican States]                                                28
Ministry of Foreign Affairs

(also referred to as No. 4:10-cr-00494), which was filed on January 29, 2015 with regard to the **money laundering** with which Mr. **HARRIS DEMPSEY BALLOW** is charged, [he] and his co-conspirators created and acquired shell companies in foreign countries and opened accounts for those companies at brokerage agencies in the United States and abroad; they would then cause the accounts to sell their shares in the companies E-SOL and Medra on the over-the-counter (OTC) securities market. After the shares were sold, the proceeds were laundered once again through wire transfers to bank accounts held in the names of various shell companies in Belize, Mexico and Panama.

In that regard, this conduct is defined and punished under Mexican criminal law in Article 400 bis of the Federal Criminal Code in force at the time the crimes were committed, which states that **five to fifteen years of imprisonment** shall be imposed on whoever, on his or her own behalf or on behalf of another, acquires, conveys, administers, holds, exchanges, deposits, pledges in guarantee, invests, transports or transfers resources, ownership interest or property of any nature, knowing that they are derived from or represent the proceeds of an **unlawful activity**, indicating the following:

### *FEDERAL CRIMINAL CODE*

*CHAPTER II*
*Transactions involving resources derived from unlawful activities*

*"**Article 400 Bis.** Whoever engages in any of the following conduct, either directly or through an intermediary, shall be sentenced to **five to fifteen years of imprisonment** and a fine of one thousand to five thousand days: acquires, conveys, administers, holds, exchanges, deposits, pledges as a guarantee, invests, transports or transfers, within the national territory, or from the national territory abroad, or the reverse; any resources, ownership interest or property of any nature, with the knowledge that they are derived from or represent the proceeds of an unlawful activity, or for any of the following purposes: to conceal, or attempt to conceal, cover up or prevent knowledge of the origin, location, destination or ownership of such resources, ownership interest or property, or to further any unlawful activity."*

[Seal of the United Mexican States]
Ministry of Foreign Affairs

With regard to all the above acts allegedly committed by the person requested, it is important to note that these are associated with Article 8 of the Federal Criminal Code in force at the time the acts were committed, in its theory of criminal intent, since the documents sent with the extradition request do not show that the requested party acted negligently; in other words, without intending to commit the crime. They are also associated with the first paragraph of Article 9 of the aforementioned Code, since the extradition request and the evidence attached thereto show that the person requested allegedly knew that he was acting unlawfully, since he engaged in the distribution of cocaine in the United States of America. And finally, they are associated with Article 13(I) of the Federal Criminal Code in force at the time the acts occurred that this person requested is charged with. This section is reproduced as follows:

*"**ARTICLE 8.** Criminal acts or omissions may only be performed either intentionally or negligently.*

***ARTICLE 9***: *A person acts intentionally when, knowing the elements of the defined crime, or its generally foreseeable possible outcome, wants or agrees to perform the act described in the law, and*

*(...)*

*"**ARTICLE 13.** Perpetrators of or participants in the crime:*

*I. Those who agree to or prepare its commission;*

*II. Those who commit it on their own;*

*III. Those who commit it jointly with others;*

*IV. Those who cause it to be committed through another;*

*V. Those who intentionally cause another to commit it;*

*VI. Those who intentionally aid or abet another in its commission;*

*VII. Those who, subsequent to its commission, assist the criminal in fulfillment of a promise made prior to the crime, and*

[Seal of the United Mexican States]
Ministry of Foreign Affairs

30

*VIII. Those who, without prior agreement, engage in its commission with others, when the outcome of each one's individual action cannot be accurately determined.*

*The perpetrators or participants referenced in this article shall each be held responsible in proportion to his or her individual guilt.*

*In the case of the subjects referenced in Sections VI, VII and VIII, the punishment provided under Article 64 bis of this Code shall apply."*

In accordance with the above, and by virtue of the corresponding articles of Mexican criminal law cited above, the acts for which Mr. **HARRIS DEMPSEY BALLOW,** a/k/a "BUTCH BALLOW," a/k/a "DEMPSEY HARRIS," a/k/a "DAVID WOOD," a/k/a "JOE GIBBONS," a/k/a "HARRIS BALLOW," a/k/a "JOED GIBBONS," a/k/a "JOEDAVID GIBBONS," a/k/a "DEMPEY BALLOW HARRIS," a/k/a "DAVID C. WOOD," a/k/a "HARRISBUTCH BALLOW," a/k/a "JOE DAVID GIBBONS," a/k/a "DEMPSEY BALLOW HARRIS," a/k/a "JOHN GILTHORP," a/k/a "JOHN GILL," a/k/a "MELVIN JOHN GELSTHORPE," a/k/a "JOHN GEL," a/k/a "MELVYN JOHN GELSTHORPE," a/k/a "TOM BROWN," a/k/a "BUBBA," a/k/a "MARTIN TWINLEY," a/k/a "MARTIN TWYNLEY," a/k/a "MARTIN TWENGLY," is being requested **are punishable** by a penalty of deprivation of liberty, the maximum of which is not less than one year.

With regard to the legislation of the United States of America, the acts with which Mr. **HARRIS DEMPSEY BALLOW** is charged are also punishable under U.S. law by a penalty of deprivation of liberty, the maximum of which is not less than one year, as established under Article 4(1) of the Extradition Treaty entered into between the United Mexican States and the United States of America, pursuant to the following:

[Seal of the United Mexican States]
Ministry of Foreign Affairs

- **(1) Count One,** conspiracy to commit fraud by wire transfer in violation of Title 18, United States Code, Sections 1343 and 1349; the maximum penalty is **20 years of imprisonment.**

- **(2–15 and 54–59) Counts Two through Fifteen and Counts Fifty-four through Fifty-nine,** specific instances of fraud by wire transfer, as well as aiding and abetting these offenses, in violation of Title 18, United States Code, Sections 1343 and 2; the maximum penalty is **20 years of imprisonment** on each charge.

- **(16) Count Sixteen,** conspiracy to commit money laundering offenses in violation of Title 18, United States Code, Section 1956(h). the maximum penalty is **10 to 20 years of imprisonment**, depending on the punishment provided for each specific crime.

- **(17–50) Counts Seventeen through Fifty,** specific instances of money laundering, as well as aiding and abetting these offenses, in violation of Title 18, United States Code, Sections 1957 and 2; the maximum penalty is **10 years of imprisonment** for each crime.

- **(60–69) Counts Sixty through Sixty-nine,** specific instances of money laundering, as well as aiding and abetting these crimes, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2; the maximum penalty is **20 years of imprisonment** on each charge.

[Seal of the United Mexican States]
Ministry of Foreign Affairs

32

- **(70–79) Counts Seventy through Seventy-nine,** specific instances of money laundering, as well as aiding and abetting these offenses, in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2; the maximum penalty is **20 years of imprisonment** on each charge; and,

- **(80–87) Counts Eighty through Eighty-seven,** specific instances of money laundering, as well as aiding and abetting these crimes, in violation of Title 18, United States Code, Sections 1956(a)(2)(A) and 2; the maximum penalty is **20 years of imprisonment** on each charge;

Moreover, the U.S. government has satisfied the terms of Article 2(1) of the aforementioned Treaty, which establishes that wilful unlawful conduct that falls within of any of the clauses of the Appendix to this international instrument shall permit extradition, which would allow extradition for acts with which the person requested are charged and that fall within clauses 8 and 12 of the aforementioned Appendix, which are reproduced as follows:

"*APPENDIX*

"*(...)*

*8. Fraud.*

*(...)*

*12. Receiving or transporting sums of money, securities or any item knowing that these were criminally obtained.*

*(...)"*

[Seal of the United Mexican States]
Ministry of Foreign Affairs

33

It is also important to note that although the crime of <u>conspiracy</u> is not listed in any of the clauses of the Appendix to the Treaty, extradition is also admissible pursuant to Article 2(3) of the Extradition Treaty entered into between the United Mexican States and the United States of America, which is reproduced as follows:

> *"Extradition shall also be granted for wilful acts which, **<u>although not being included in the Appendix, are punishable, in accordance with the federal laws of both Contracting Parties</u>**, by a deprivation of liberty the maximum of which shall be not less than one year."*

Based on the above, the requested authorization is deemed admissible, since as analyzed earlier, the intentional acts alleged committed by the extradited person are punishable under U.S. law by a deprivation of liberty, the maximum of which is not less than one year, and these unlawful acts are likewise punishable in Mexico under Articles 164, 386 and 400 bis of the Federal Criminal Code in force at the time of the events; and under Title 18, United States Code, Sections 2, 1343, 1349, 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), 1956(a)(2)(A) and 1956(h),

In support of the foregoing, this ruling in case law is reproduced as follows:

***EXTRADITION TREATIES SIGNED BY MEXICO. TO DETERMINE WHETHER THE ACTS WITH WHICH THE REQUESTED SUBJECT IS CHARGED CONSTITUTE CRIMES IN BOTH STATES, THE PRINCIPLE OF EXACT APPLICATION OF CRIMINAL LAW IS NOT APPLICABLE.*** *The principle of exact application of criminal law, which refers to the guarantee of judicial certainty that bars imposing merely by analogy, or even by preponderance of reason, any sentence that is not required by a law that is precisely applicable to the crime involved, does not apply in determining whether the conduct attributed to the requested subject constitutes a crime under the legislation of the two States that signed the*

[Seal of the United Mexican States]
Ministry of Foreign Affairs

*extradition treaty, since such principle alludes to the rule establishing the definition of a crime and its associated punishment, not the comparison of two figures; moreover, for purposes of granting extradition it is unnecessary for the crime to be defined and punished using the same terms.*
*OPINION No. XXVIII/2008 (PLENARY)*
*Amparo [appeal on constitutional grounds] under review 1267/2003. Petitioner: Marco Antonio García López. February 16, 2096 [sic] - Unanimous by eleven votes. Author of the opinion: Guillermo I. Ortiz Mayagoitia. Clerk: Marco Antonio Cepeda Anaya. Amparo [appeal on constitutional grounds] under review 1303/2003. Petitioners: Antonio Derás González and Susana Aragón Lugo. February 21, 2006. Unanimous by eleven votes. Author of the opinion: Genaro David Góngora Pimentel. Clerk: Javier Arnaud Viñas."*

Therefore, we conclude that the acts attributed to the person requested in the requested State are wilful acts that fall within Article 2(1) of the Extradition Treaty between the United Mexican States and the United States of America, and are punishable under the laws of both Contracting Parties by a deprivation of liberty, the maximum of which is not less than one year, thereby satisfying the requirement established in the applicable bilateral treaty.

## G. ANALYSIS OF GROUNDS FOR DENIAL.

**VII.** We proceed to analyze the request for consent for Mr. **HARRIS DEMPSEY BALLOW**, a/k/a "BUTCH BALLOW," a/k/a "DEMPSEY HARRIS," a/k/a "DAVID WOOD," a/k/a "JOE GIBBONS," a/k/a "HARRIS BALLOW," a/k/a "JOED GIBBONS," a/k/a "JOEDAVID GIBBONS," a/k/a "DEMPEY BALLOW HARRIS," a/k/a "DAVID C. WOOD," a/k/a "HARRISBUTCH BALLOW," a/k/a "JOE DAVID GIBBONS," a/k/a "DEMPSEY BALLOW HARRIS," a/k/a "JOHN GILTHORP," a/k/a "JOHN GILL," a/k/a "MELVIN JOHN GELSTHORPE," a/k/a "JOHN GEL," a/k/a "MELVYN JOHN GELSTHORPE," a/k/a "TOM BROWN," a/k/a "BUBBA," a/k/a "MARTIN TWINLEY," a/k/a "MARTIN TWYNLEY," a/k/a "MARTIN TWENGLY," to be prosecuted for crimes in addition to those for which he was extradited, in order to ensure that it does not fall within any of the instances for denial of extradition agreed upon between the Government of Mexico

[Seal of the United Mexican States]
Ministry of Foreign Affairs

and the Government of the United States of America as part of the bilateral Extradition Treaty, as follows:

Articles 5, 6, 7 and 8 of the Extradition Treaty entered into between the United Mexican States and the United States of America establish that international extradition shall not be granted for offenses that are political or of a political character, nor for a purely military offense, or if the request is made in order to persecute and punish a person on grounds of the race, religion, nationality or political opinions of the subject, or he or she will be tried by a special tribunal of the Requesting Party, or he or she is pursued in order to enforce a punishment imposed by such tribunal.

A.    Article 5 of the Extradition Treaty entered into between the United Mexican States and the United States of America establishes that international extradition shall not be granted for offenses that are political or of a political character, nor for a purely military offense, and is reproduced as follows:

*"ARTICLE 5.*
*Political and Military Offenses*

*1. Extradition shall not be granted when the offense for which it is requested is political or of a political character. If any question arises as to the application of the foregoing paragraph, the Executive authority of the requested Party shall decide.*

*2. For the purpose of this Treaty, the following offenses shall not be considered to be offenses included in paragraph 1:*

*(a) The murder or other wilful crime against the life or physical integrity of a Head of State or Head or Government or a member of his family, including attempts to commit such an offense;*

*(b) An offense which the Contracting Parties may have the obligation to prosecute by reason of a multilateral international agreement.*

*3. Extradition shall not be granted when the offense for which extradition is requested is a purely military offense."*

[Seal of the United Mexican States]
Ministry of Foreign Affairs

In this regard, this Ministry of State takes into account the fact that the offenses for which the U.S. Government is requesting **CONSENT TO THE EXCEPTION TO THE RULE OF SPECIALITY** in order that **HARRIS DEMPSEY BALLOW**, a/k/a "JOED GIBBONS," a/k/a "JOEDAVID GIBBONS," a/k/a "DEMPEY BALLOW HARRIS," a/k/a "DAVID C. WOOD," a/k/a "HARRISBUTCH BALLOW," a/k/a "JOE DAVID GIBBONS," a/k/a "DEMPSEY BALLOW HARRIS," a/k/a "JOHN GILTHORP," a/k/a "JOHN GILL," a/k/a "MELVIN JOHN GELSTHORPE," a/k/a "JOHN GEL," a/k/a "MELVYN JOHN GELSTHORPE," a/k/a "TOM BROWN," a/k/a "BUBBA," a/k/a "MARTIN TWINLEY," a/k/a "MARTIN TWYNLEY," a/k/a "MARTIN TWENGLY," may be prosecuted for offenses in addition to those for which his extradition was granted, do not constitute political offenses, since in terms of the provisions of Article 144 of the Federal Criminal Code, offenses of a political character are found to be those of rebellion, sedition, mutiny and conspiracy to commit these, which are not included in the extradition request drafted by the Requesting State against the extradited person; the petition indicates that his extradition is requested in order to be prosecuted for conspiracy, fraud and money laundering.

Moreover, the offenses with which Mr. **HARRIS DEMPSEY BALLOW** is charged are not of a military character, nor are they associated with this grounds for denial, since the documentary evidence found in the case file kept in the record does not show that the extradited person belongs or has belonged to the military of either the requesting or the requested State, and therefore has committed no relevant acts against military discipline.

Nor is it evident that the extradition request was filed for purposes of persecuting or punishing him on grounds of his race, religion, nationality or political opinions, since the requested party is requested in order to

[Seal of the United Mexican States]
Ministry of Foreign Affairs

37

be prosecuted under the **Third Superseding Indictment with Cause No. H-10-494-SSS (also referred to as No. 4:10-cr-00494),** which was filed on January 29, 2015 for the crimes of conspiracy, fraud and money laundering.

Finally, Mr. **HARRIS DEMPSEY BALLOW,** a/k/a "BUTCH BALLOW," a/k/a "DEMPSEY HARRIS," a/k/a "DAVID WOOD," a/k/a "JOE GIBBONS," a/k/a "HARRIS BALLOW," a/k/a "JOED GIBBONS," a/k/a "JOEDAVID GIBBONS," a/k/a "DEMPEY BALLOW HARRIS," a/k/a "DAVID C. WOOD," a/k/a "HARRISBUTCH BALLOW," a/k/a "JOE DAVID GIBBONS," a/k/a "DEMPSEY BALLOW HARRIS," a/k/a "JOHN GILTHORP," a/k/a "JOHN GILL," a/k/a "MELVIN JOHN GELSTHORPE," a/k/a "JOHN GEL," a/k/a "MELVYN JOHN GELSTHORPE," a/k/a "TOM BROWN," a/k/a "BUBBA," a/k/a "MARTIN TWINLEY," a/k/a "MARTIN TWYNLEY," a/k/a "MARTIN TWENGLY," will not be tried by a tribunal of exception, since the case is being tried before the **Federal District Court for the Southern District of Texas** for the crimes described above.

By virtue thereof, the grounds for denial contemplated in Article 5 of the applicable bilateral Treaty, reproduced below, are not met.

B.      Article 6 of the applicable bilateral Treaty is reproduced as follows:

*"**ARTICLE 6 Nom** [sic] **bis in idem**

Extradition shall not be granted when the person sought has been prosecuted or has been tried and convicted or acquitted by the requested Party for the offense for which extradition is requested."*

Pursuant to the extradition file on the record, no document or element can be found that establishes

[Seal of the United Mexican States]
Ministry of Foreign Affairs

that this person requested has been prosecuted or has been tried and convicted or acquitted by the Mexican authorities for the same offenses, or for the same acts that support the extradition request. It should also be noted that neither the requested party nor his defenders have raised any argument in that regard, much less offered any item of evidence associated with these grounds for denial, and thus the scenarios contained in that article of the Treaty do not apply.

     **C.**    With regard to the grounds for denial contained in Article 7 of the Extradition Treaty entered into between the United Mexican States and the United States of America, which is reproduced as follows:

> *"**ARTICLE 7** Lapse of Time*
>
> *Extradition shall not be granted when the prosecution or the enforcement of the penalty for the offense for which extradition has been sought has become barred by lapse of time according to the laws of the requesting or requested Party."*

This Ministry of State proceeded to analyze the statute of limitations applicable to the unlawful acts with which the person requested is charged at the time the events occurred, under the following terms:

Articles **100, 102, 104, 105, 108 and 110** of the Federal Criminal Code in force at the time the offenses were committed are reproduced as follows:

> *"**ARTICLE 100.** Criminal prosecution and punishment shall be extinguished due to the passage of time pursuant to the following articles.*
>
> *"**ARTICLE 102.** The statute of limitations for criminal prosecution shall be continuous; it shall contemplate the offense and all its modes, and the term shall be counted as follows:*

[Seal of the United Mexican States]
Ministry of Foreign Affairs

*I. Starting from the moment the crime was committed, if it was at one time;*

*II. Starting from the date the final act was executed or proper conduct was omitted, if it is an attempted crime;*

*III. Starting from the date of the final act in the event of a continuous crime; and*

*IV. Starting from the cessation of the commission of the ongoing crime.*

***ARTICLE 104.*** *The statute of limitations for criminal prosecution is one year if the offense only merits a fine; If, in addition to this penalty, the offense merits deprivation of liberty or an alternative thereto, the statute of limitations for criminal prosecution shall be applied to the term of deprivation of liberty; the same shall be observed in the event it is appropriate to impose any other accessory penalty.*

***ARTICLE 105.*** *The statute of limitations for criminal prosecution shall be equal to the arithmetic mean of the term of deprivation of liberty under the law applicable to the offense in question, but it shall never be less than three years.*

***ARTICLE 108.*** *In the event of concurrent offenses, the statute of limitations for the criminal prosecution that results shall be equal to the crime that merits a larger penalty.*

***ARTICLE 110.*** *The statute of limitations shall be tolled for any proceedings that occur as part of the investigation of the offense and of the offenders, even though, if their identities are unknown, such proceedings are not undertaken against any specific person.*

*If no proceedings are undertaken, the statute of limitations begins to run again starting on the day following the last proceeding.*

*The statute of limitations shall also be tolled upon any demand for assistance in the investigation of the offense or of the offender, upon any proceedings that may be undertaken in order to obtain international extradition, and upon any demand for extradition of the accused that is made formally by the State Attorney of any state to another where he or she has taken refuge, is located or is in custody for the same or for another offense. The first case shall also cause the suspension of the proceedings underway by the requested authority, and in the second case the suspension shall continue until or unless the requested authority refuses to extradite or the legal status of the detained person that served as the grounds for postponing the extradition no longer exists.*

*The suspension of the statute of limitations for criminal prosecution may only be extended up to one-half of the terms indicated in Articles 105, 106 and 107 of this Code."*

The above citations reveal the following rules:

[Seal of the United Mexican States]
Ministry of Foreign Affairs

**a)** In order for the statute of limitations for criminal prosecutions to apply, the base number shall be the arithmetic mean of the penalties, depending on the offense involved.

**b)** The statute of limitations shall apply as of the date the crime was committed, if it was at one time; starting from the date the final act was executed or proper conduct was omitted, if it is an attempted crime; starting from the date of the final act in the event of a continuous crime, and as of the cessation of the commission of the ongoing crime.

**c)** In the event of concurrent offenses, the statute of limitations shall be equal to the crime that merits a larger penalty.

**d)** The statute of limitations shall be tolled upon any demand for assistance in the investigation of the offense or of the offender; as well as for any proceedings undertaken to obtain international extradition; and,

**e)** The statute of limitations shall also be tolled due to the arrest of a prisoner or upon any demand for extradition of an accused made formally by the State Attorney of any state to another where he or she has taken refuge, is located or is in custody for the same or for another offense.

This Ministry of State proceeded to analyze the statute of limitations applicable to the unlawful acts with which the person requested is charged at the time the events occurred, under the following terms:

In the instant case, with regard to **Counts One and Sixteen**, charging the person requested with the crime of **conspiracy**, as analyzed, this conduct is punishable under Article 164 of the Federal Criminal Code by a sentence of 5 to 10 years of imprisonment,

[Seal of the United Mexican States]
Ministry of Foreign Affairs

the arithmetic mean of which is **seven years and six months**, which have not elapsed since the month of July 2010, the latest date on which the U.S. authorities had knowledge of the criminal acts of the person requested.

In addition, with regard to **Counts One, Two through Fifteen** and **Fifty-four through Fifty-nine**, charging the extradited person with **wire fraud**, this conduct is punishable under Article 386(III) of the Federal Criminal Code in force at the time of the events by a sentence of **3 to 12 years of imprisonment**, the arithmetic mean of which is **seven years and seven months**, which have not elapsed since the month of July 2010, the latest date on which the U.S. authorities had knowledge of the criminal acts of the person requested.

Finally, with regard to **Counts Sixteen through Fifty, Sixty through Sixty-nine, Seventy through Seventy-nine and Eighty through Eighty-nine** [*sic*]**,** related to transactions involving resources of unlawful origin, as analyzed, this conduct is punishable under Article 400 bis of the Federal Criminal Code with a sentence of 5 to 15 years of imprisonment, the arithmetic mean of which is **ten years**, which have not elapsed since the month of July 2010, the latest date on which the U.S. authorities had knowledge of the criminal activities of the person requested.

In addition, and pursuant to the provisions of Article 110 of the Federal Criminal Code, **the statute of limitations was tolled** on December 19, 2016, the date on which the Government of the United States of America, through its Embassy, by means of diplomatic note

[Seal of the United Mexican States]
Ministry of Foreign Affairs

16-4620, submitted to the Government of Mexico (Ministry of Foreign Affairs) its request for consent to the exception to the Rule of Speciality regarding Mr. **HARRIS DEMPSEY BALLOW,** a/k/a "BUTCH BALLOW," a/k/a "DEMPSEY HARRIS," a/k/a "DAVID WOOD," a/k/a "JOE GIBBONS," a/k/a "HARRIS BALLOW," a/k/a "JOED GIBBONS," a/k/a "JOEDAVID GIBBONS," a/k/a "DEMPEY BALLOW HARRIS," a/k/a "DAVID C. WOOD," a/k/a "HARRISBUTCH BALLOW," a/k/a "JOE DAVID GIBBONS," a/k/a "DEMPSEY BALLOW HARRIS," a/k/a "JOHN GILTHORP," a/k/a "JOHN GILL," a/k/a "MELVIN JOHN GELSTHORPE," a/k/a "JOHN GEL," a/k/a "MELVYN JOHN GELSTHORPE," a/k/a "TOM BROWN," a/k/a "BUBBA," a/k/a "MARTIN TWINLEY," a/k/a "MARTIN TWYNLEY," a/k/a "MARTIN TWENGLY."

Now, with regard to the **laws of the requesting State,** the statute of limitations has also not barred the criminal prosecution and trial of the person requested before the **Federal District Court for the Southern District of Texas** pursuant to the Third Superseding Indictment with Cause No. H-10-494- SSS (also referred to as No. 4:10-cr-00494), which was filed on January 29, 2015. By virtue of the foregoing, in light of the fact that the acts with which the requested person is charged took place on or about and between 2009 and July 2010, we find that Mr. **HARRIS DEMPSEY BALLOW,** a/k/a "BUTCH BALLOW," a/k/a "DEMPSEY HARRIS," a/k/a "DAVID WOOD," a/k/a "JOE GIBBONS," a/k/a "HARRIS BALLOW," a/k/a "JOED GIBBONS," a/k/a "JOEDAVID GIBBONS," a/k/a "DEMPEY BALLOW HARRIS," a/k/a "DAVID C. WOOD," a/k/a "HARRISBUTCH BALLOW," a/k/a "JOE DAVID GIBBONS," a/k/a "DEMPSEY BALLOW HARRIS," a/k/a "JOHN GILTHORP," a/k/a "JOHN GILL," a/k/a "MELVIN JOHN GELSTHORPE," a/k/a "JOHN GEL," a/k/a "MELVYN JOHN GELSTHORPE," a/k/a "TOM BROWN," a/k/a "BUBBA," a/k/a "MARTIN TWINLEY," a/k/a "MARTIN TWYNLEY," a/k/a "MARTIN TWENGLY," was indicted within the term established under U.S. law, taking into account the following:

[Seal of the United Mexican States]
Ministry of Foreign Affairs

> **Counts One through Eighty-seven** merely require that the defendant be indicted within **five years** of the date on which the crime or crimes were committed, as established by **Title 18, United States Code, Section 3282**, which is reproduced as follows:

> *"Title 18, United States Code, Section 3282*
>
> *3282. Offenses Not Capital*
>
> *(a) In general. Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted **within five years** next after such offense shall have been committed."*

> According to Title 18, United States Code, Section 3290, the term of **five years** does not include any time during which a defendant has been a fugitive from justice. Since **HARRIS DEMPSEY BALLOW** committed the offenses while he was a fugitive, the five-year period only begins once the defendant ceases being a fugitive. Therefore, once an indictment is filed with the federal district court, the statute of limitations is tolled and the passage of time is not counted. This provision is reproduced as follows:

> *"Title 18, United States Code, Section 3290*
>
> *3282. [sic] Fugitives from justice.*
>
> *No statute of limitations shall extend to any person fleeing from justice."*

In this regard, it is worth noting the statement by JOHN R. LEWIS, Assistant United States Attorney for the Southern District of Texas,

[Seal of the United Mexican States]
Ministry of Foreign Affairs

United States of America, in his affidavit regarding the statute of limitations, which reads:

"32. I have carefully reviewed the applicable statute of limitations, and the prosecution of the charges against BALLOW in this case is not barred by this law. BALLOW was a fugitive from December 17, 2004, when he failed to appear for sentencing, and continued as such until April 8, 2011, when he was extradited from Mexico to the United States. Counts One and Sixteen of the Third Superseding Indictment, which was filed on January 29, 2015, charge BALLOW with ongoing crimes which occurred starting in the year 2004 and continued through July 13, 2010; Counts Two through Fifteen involve offenses that occurred from July 25, 2008 until March 2, 2010; Counts Seventeen through Fifty involve offenses that occurred from September 14, 2006 until February 24, 2010; and Counts Fifty-four through Eighty-seven involve offenses that occurred from July 20, 2009 until July 4, 2010. Since BALLOW was a fugitive when he committed the crimes charged, the statute of limitations did not begin to run when he committed the crimes. Instead, the statute of limitations began to run when BALLOW returned to the United States on April 8, 2011. BALLOW was indicted on all charges in the Third Superseding Indictment within the prescribed five-year time period."

Therefore, the grounds for denial established in Article 7 of the Extradition Treaty entered into between the United Mexican States and the United States of America do not apply, since the statute of limitations does not bar criminal prosecution in order to try and punish the person requested either under Mexican criminal laws or under the criminal laws of the requesting State.

**D.**    Regarding life imprisonment and capital punishment:

With regard to a sentence of life imprisonment, this Ministry states that the crimes with which the requested party is charged in the United States of America are punishable by **sentences of deprivation of liberty**, and thus this is **NOT AN APPLICABLE SENTENCE** in the instant case.

[Seal of the United Mexican States]
Ministry of Foreign Affairs

With regard to guarantees for ruling out capital punishment, as referenced in Article 8 of the applicable international instrument, this Ministry reiterates that the crimes with which the requested party is charged in the United States of America are punishable by **sentences of deprivation of liberty**, and thus capital punishment is **NOT AN APPLICABLE SENTENCE** in the instant case, and it is thus unnecessary for the U.S. Government to provide the aforementioned guarantees.

I.    **FINAL CONCLUSION.**

By virtue of the foregoing, it is evident that this request refers to facts, charges and a Federal Court other than those for which he was extradited on April 8, 2011. Therefore, this Ministry finds that, taking into consideration the opinion given by the Office of the Attorney General of the Republic, and in compliance with the international obligations assumed by the Mexican government, it is appropriate to grant **consent** to the Government of the United States of America **to the exception to the Rule of Speciality**, in order that Mr. **HARRIS DEMPSEY BALLOW**, a/k/a "BUTCH BALLOW," a/k/a "DEMPSEY HARRIS," a/k/a "DAVID WOOD," a/k/a "JOE GIBBONS," a/k/a "HARRIS BALLOW," a/k/a "JOED GIBBONS," a/k/a "JOEDAVID GIBBONS," a/k/a "DEMPEY BALLOW HARRIS," a/k/a "DAVID C. WOOD," a/k/a "HARRISBUTCH BALLOW," a/k/a "JOE DAVID GIBBONS," a/k/a "DEMPSEY BALLOW HARRIS," a/k/a "JOHN GILTHORP," a/k/a "JOHN GILL," a/k/a "MELVIN JOHN GELSTHORPE," a/k/a "JOHN GEL," a/k/a "MELVYN JOHN GELSTHORPE," a/k/a "TOM BROWN," a/k/a "BUBBA," a/k/a "MARTIN TWINLEY," a/k/a "MARTIN TWYNLEY," a/k/a "MARTIN TWENGLY," may be tried before the **Federal District Court for the Southern District of Texas** pursuant to the Third Superseding Indictment with Cause No. H-10-494-SSS (also referred to as No. 4:10-cr-00494), filed on January 29, 2015, for the crimes of conspiracy, fraud and money laundering, since

[Seal of the United Mexican States]
Ministry of Foreign Affairs

the request made is consistent with Article 2(1) of the international bilateral Extradition Treaty, also keeping in mind that the aforementioned treaty is also a Supreme Law of the Union pursuant to Article 133 of the Political Constitution of the United Mexican States.

Finally, it is important to reiterate that this Ministry **is not offering an opinion on the guilt or innocence of the extradited party** regarding the additional crimes with which he is charged, given that this Order is not a ruling in a criminal case, but rather a ruling on a request made by a foreign Government pursuant to the terms of the applicable bilateral treaty. Thus, in due course the extradited party may exercise such rights he deems appropriate before the Court that has requested him, and may also produce such items of evidence and other documentation that he deems useful in disproving his involvement in the acts attributed to him, which is not a matter addressed in this Agreement, because, as has been explained in the Recitals section earlier, the involvement of this Ministry consists solely in verifying that the terms of the treaty are met. In this regard, the evidence submitted by the U.S. government satisfies the requirements of the Extradition Treaty between the United Mexican States and the United States of America, since it contains the necessary elements showing that the Requesting State does have an additional case against the extradited person for offenses other than those for which his international extradition was granted, in that it submitted items of evidence that were analyzed, qualified and assessed by this Ministry before granting the requested authorization.

By virtue of the foregoing, this Ministry finds that, in fulfillment of the international obligations assumed by the Mexican government, it is appropriate to grant its **CONSENT TO THE EXCEPTION TO THE RULE OF SPECIALITY** to the Government of the United States

[Seal of the United Mexican States]
Ministry of Foreign Affairs

of America, in order that it may try Mr. **HARRIS DEMPSEY BALLOW**, a/k/a "BUTCH BALLOW," a/k/a "DEMPSEY HARRIS," a/k/a "DAVID WOOD," a/k/a "JOE GIBBONS," a/k/a "HARRIS BALLOW," a/k/a "JOED GIBBONS," a/k/a "JOEDAVID GIBBONS," a/k/a "DEMPEY BALLOW HARRIS," a/k/a "DAVID C. WOOD," a/k/a "HARRISBUTCH BALLOW," a/k/a "JOE DAVID GIBBONS," a/k/a "DEMPSEY BALLOW HARRIS," a/k/a "JOHN GILTHORP," a/k/a "JOHN GILL," a/k/a "MELVIN JOHN GELSTHORPE," a/k/a "JOHN GEL," a/k/a "MELVYN JOHN GELSTHORPE," a/k/a "TOM BROWN," a/k/a "BUBBA," a/k/a "MARTIN TWINLEY," a/k/a "MARTIN TWYNLEY," a/k/a "MARTIN TWENGLY," to be tried [*sic*] pursuant to the Third Superseding Indictment with Cause No. H-10-494-SSS (also referred to as No. 4:10-cr-00494), filed on January 29, 2015, for crimes other than those for which his extradition was granted, in consideration of the fact that the aforementioned request for consent is consistent with Article 17(1)(c) of the bilateral Extradition Treaty, and must therefore be ordered, and

## RESOLVED:

**ONE:** That the Minister of Foreign Affairs is competent to rule on this matter pursuant to the terms of Recitals I above.

**TWO:** The Government of the United Mexican States **GRANTS ITS CONSENT** to the Government of the United States of America **to the exception to the Rule of Speciality** under the terms stipulated in Article 17(1)(c) of the Extradition Treaty between

[*signatures*]

[Seal of the United Mexican States]
Ministry of Foreign Affairs

the United Mexican States and the United States of America, in order that Mr. **HARRIS DEMPSEY BALLOW,** a/k/a "BUTCH BALLOW," a/k/a "DEMPSEY HARRIS," a/k/a "DAVID WOOD," a/k/a "JOE GIBBONS," a/k/a "HARRIS BALLOW," a/k/a "JOED GIBBONS," a/k/a "JOEDAVID GIBBONS," a/k/a "DEMPEY BALLOW HARRIS," a/k/a "DAVID C. WOOD," a/k/a "HARRISBUTCH BALLOW," a/k/a "JOE DAVID GIBBONS," a/k/a "DEMPSEY BALLOW HARRIS," a/k/a "JOHN GILTHORP," a/k/a "JOHN GILL," a/k/a "MELVIN JOHN GELSTHORPE," a/k/a "JOHN GEL," a/k/a "MELVYN JOHN GELSTHORPE," a/k/a "TOM BROWN," a/k/a "BUBBA," a/k/a "MARTIN TWINLEY," a/k/a "MARTIN TWYNLEY," a/k/a "MARTIN TWENGLY," may be prosecuted before the **Federal District Court for the Southern District of Texas, United States of America,** pursuant to the Third Superseding Indictment with Cause No. H-10-494-SSS (also referred to as No. 4:10-cr-00494), filed on January 29, 2015, for the following crimes:

- **(1) Count One,** conspiracy to commit fraud by wire transfer in violation of Title 18, United States Code, Sections 1343 and 1349;

- **(2–15 and 54–59) Counts Two through Fifteen and Counts Fifty-four through Fifty-nine,** specific instances of fraud by wire transfer, as well as aiding and abetting these offenses, in violation of Title 18, United States Code, Sections 1343 and 2;

- **(16) Count Sixteen,** conspiracy to commit money laundering offenses in violation of Title 18, United States Code, Section 1956(h);

[*signature*]

[Seal of the United Mexican States]                                                49
Ministry of Foreign Affairs

- **(17–50) Counts Seventeen through Fifty,** specific instances of money laundering, as well as aiding and abetting these offenses, in violation of Title 18, United States Code, Sections 1957 and 2;

- **(60–69) Counts Sixty through Sixty-nine,** specific instances of money laundering, as well as aiding and abetting these crimes, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2;

- **(70–79) Counts Seventy through Seventy-nine**, specific instances of money laundering, as well as aiding and abetting these offenses, in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2; and,

- **(80–87) Counts Eighty through Eighty-seven,** specific instances of money laundering, as well as aiding and abetting these crimes, in violation of Title 18, United States Code, Sections 1956(a)(2)(A) and 2.

**THREE:** Notice of this Agreement is to be given to the Embassy of the United States of America in Mexico, to the Office of the Attorney General of the Republic and to the Consulate General of Mexico in Houston, Texas, United States of America, for all appropriate legal purposes, through the offices of the General Directorate for Legal Affairs.

[*signatures*]

[Seal of the United Mexican States]
Ministry of Foreign Affairs

**FOUR:** Notice of this Agreement is to be given to Mr. **HARRIS DEMPSEY BALLOW,** a/k/a "BUTCH BALLOW," a/k/a "DEMPSEY HARRIS," a/k/a "DAVID WOOD," a/k/a "JOE GIBBONS," a/k/a "HARRIS BALLOW," a/k/a "JOED GIBBONS," a/k/a "JOEDAVID GIBBONS," a/k/a "DEMPEY BALLOW HARRIS," a/k/a "DAVID C. WOOD," a/k/a "HARRISBUTCH BALLOW," a/k/a "JOE DAVID GIBBONS," a/k/a "DEMPSEY BALLOW HARRIS," a/k/a "JOHN GILTHORP," a/k/a "JOHN GILL," a/k/a "MELVIN JOHN GELSTHORPE," a/k/a "JOHN GEL," a/k/a "MELVYN JOHN GELSTHORPE," a/k/a "TOM BROWN," a/k/a "BUBBA," a/k/a "MARTIN TWINLEY," a/k/a "MARTIN TWYNLEY," a/k/a "MARTIN TWENGLY," through the offices of the Consulate General of Mexico in Houston, Texas, United States of America.

DUE TO THE TEMPORARY ABSENCE OF THE MINISTER OF FOREIGN AFFAIRS, THE DEPUTY MINISTER OF FOREIGN AFFAIRS AND THE DEPUTY MINISTER FOR NORTH AMERICA, PURSUANT TO ARTICLE 53 OF THE INTERNAL REGULATIONS OF THE MINISTRY OF FOREIGN AFFAIRS IN FORCE, THE DEPUTY MINISTER FOR LATIN AMERICA AND THE CARIBBEAN, WHO IS IN CHARGE OF THIS OFFICE, IN MEXICO CITY, ON THE ELEVENTH DAY OF THE MONTH OF JULY OF THE YEAR TWO THOUSAND SEVENTEEN.



*[signature]*
**MARIA DEL SOCORRO FLORES LIERA**

[signatures]